CHARLES R. LEAF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62996. Filed March 31, 1960.

*Charles R. Leaf, pro se.*
*William O. Allen, Esq.,* for the respondent.

#### OPINION.

RAUM, *Judge:* Respondent determined the following deficiencies in income tax and additions to tax:

| Year | Deficiency | Additions to tax, I.R.C. 1939 | | | |
| --- | --- | --- | --- | --- | --- |
| | | Sec. 291(a) | Sec. 293(a) | Sec. 293(b) | Sec. 294(d) |
| 1950 | $1,005.55 | | $50.28 | | $2,085.35 |
| 1951 | 20,132.75 | | | $10,066.38 | 3,429.30 |
| 1952 | 107,298.26 | $5,364.91 | | 53,649.13 | 19,226.63 |

The parties have settled a number of issues, and some have been abandoned. The sole remaining issue is whether all or any part of $131,500, received by petitioner in the year 1952 from his wholly owned corporation, constitutes income taxable to him for that year. The facts have been stipulated.

Petitioner, a resident of South Euclid, Ohio, filed his Federal income tax return for the year 1952 with the district director of internal revenue, Cleveland, Ohio.

During 1950 and 1951 petitioner was engaged in the business of steel warehousing with his principal place of business at Chicago, Illinois. This business was carried on at various times as a proprietorship, a partnership, or a corporation controlled by petitioner. Early in 1951, petitioner organized a new corporation under the name of Mid-America Steel Warehouse, Inc. (hereinafter sometimes called Mid-America). All of the stock of this corporation was acquired by petitioner either in his own name or the name of nominees for $5,000 cash. He made no other contribution of capital to the corporation. During 1952 Mid-America operated a steel warehousing business; petitioner was its president and chief executive officer.

On the dates indicated below in 1952 petitioner transferred to his own use and benefit funds of Mid-America as follows:

| Date | Amount |
| --- | --- |
| Oct. 3, 1952 | $7,000 |
| Oct. 10, 1952 | 58,000 |
| Oct. 14, 1952 | 15,000 |
| Oct. 14, 1952 | 4,500 |
| Oct. 14, 1952 | 47,000 |
| Total | 131,500 |

These transfers were accomplished by means of checks drawn on a corporate bank account and made payable to petitioner. The checks were signed by petitioner as president of Mid-America. They were cashed by petitioner and the proceeds were either deposited in petitioner's personal bank account or used to purchase cashier's checks payable to petitioner. Each of the checks bears the notation "Loan."

No entry was made on the books of Mid-America with respect to the $7,000 and $4,500 checks. As to the remaining three checks, Mid-America's bookkeeper, under petitioner's direction, made entries in the corporate books during the latter part of October 1952, charging the remaining checks aggregating $120,000 to an account designated "Loan–C.R.L."

Mid-America was insolvent on October 3, 10, and 14, 1952, when the transfers were made, and on those dates it had no accumulated earnings and profits.

On October 31, 1952, an involuntary petition in bankruptcy was filed against Mid-America by its creditors. On January 6, 1953, Mid-America was adjudged a bankrupt.

On January 13, 1956, petitioner was convicted upon a plea of guilty in the United States District Court for the Northern District

of Illinois, Eastern Division, under section 152, Title 18, United States Code, for the offense of having, while an officer of Mid-America, knowingly and fraudulently transferred to his own use and benefit property of the corporation in contemplation of bankruptcy. Petitioner was sentenced to a term of 25 months' imprisonment.

On April 29, 1953, the trustee in bankruptcy for Mid-America filed a petition seeking an order requiring petitioner to turn over to him the sums petitioner had transferred from Mid-America. Petitioner filed an answer to the trustee's petition on June 3, 1953, alleging certain items of setoff and further alleging that he no longer had the transferred funds. On January 11, 1954, petitioner filed an amendment to his answer, alleging further items of setoff.

On September 18, 1958, the referee in bankruptcy entered an order granting leave to dismiss the trustee's turnover petition *nunc pro tunc*, as of January 26, 1956, with leave to reinstate.

On June 29, 1959, the bankruptcy case was closed and the trustee in bankruptcy was discharged. However, the bankrupt corporation was not granted a discharge in bankruptcy, nor was petitioner expressly relieved of any obligation to the corporation, to the bankrupt estate, or to the creditors of the bankrupt.

During 1952, petitioner repaid to Mid-America or its creditors the following sums:

| Date | Amount |
|---|---|
| Oct. 1952 (various dates) | $9,500.00 |
| Dec. 2, 1952 | 9,905.20 |
| Dec. 9, 1952 | 600.00 |
| Dec. 23, 1952 | 2,800.00 |
| Total | 22,805.20 |

On December 12, 1955, petitioner paid the trustee in bankruptcy $1,000. No other repayments have been made by petitioner to the trustee in bankruptcy, or to the corporation, or to the creditors of the corporation.

Petitioner contends that the withdrawals he made by checks on the bank account of Mid-America were loans; that they were reflected on the books of Mid-America as loans; that partial repayment has been made; that the laws of the United States give Mid-America or its creditors the right at any time to enforce repayment of the balance; and that, therefore, no part of the withdrawals is includible in his taxable income for 1952. We do not agree with his conclusion.

In 1952 petitioner was the sole stockholder and president of Mid-America. During that year, in contemplation of bankruptcy, he caused that corporation to transfer funds to him in the total amount

of $131,500. Mid-America was then insolvent, and shortly thereafter was adjudicated a bankrupt. He treated the transferred funds as his own by depositing them in his personal bank account and thereafter disposing of them for noncorporate purposes. In 1952 he repaid $22,805.20 to Mid-America or its creditors, and in 1955 he paid $1,000 to the trustee in bankruptcy. There is no evidence that he intends to or will ever repay any more of the misappropriated funds. In 1956 he was convicted of knowingly and fraudulently transferring to his own use and benefit property of Mid-America in contemplation of bankruptcy. The bankruptcy case has now been closed and the trustee discharged.

Section 22(a), I.R.C. 1939, subjects to taxation "gains or profits and income derived from any source whatever." In *Rutkin* v. *United States*, 343 U.S. 130, 137, the Supreme Court said:

An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. * * * That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it.

Such gains are taxable in the yearly period during which they are realized. * * *

The rationale of the *Rutkin* case is clearly applicable here. In 1952 petitioner diverted funds, which would otherwise have been available to creditors of his wholly owned corporation, to his own use and benefit. The fact that these diversions were labeled "loans" on checks drawn by petitioner against the corporation's bank account and on its books is not conclusive of their true character in the absence of any evidence of an intention to make repayment at the time of the taking. While it is true that petitioner had an obligation to restore the funds diverted, and did make partial restitution, that obligation arose from his unlawful appropriation to his own use and benefit of funds of his insolvent corporation with the intention of defrauding creditors. The fact that he had such obligation and that subsequent to 1952 he returned a portion of the diverted funds in no way affects his liability for taxes on the funds diverted and not returned to the corporation or its creditors in 1952. *Dawkins* v. *Commissioner*, 238 F. 2d 174, 179 (C.A. 8). They amounted to $108,694.80 ($131,500 minus $22,805.20). Petitioner had such control over them in 1952 that they represented taxable income to him for that year. *Rutkin* v. *United States, supra; Davis* v. *United States*, 226 F. 2d 331, 334 (C.A. 6), certiorari denied 350 U.S. 965; *Hartman* v. *United States*, 245 F. 2d 349, 352–353 (C.A. 8). Cf. *United States* v. *James*, 273 F. 2d 5 (C.A. 7).

*Decision will be entered under Rule 50.*