MARVIN E. NEREM AND EVELYN L. NEREM, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3087–62. Filed December 3, 1963.

*Nels W. Branstad*, for the petitioners.
*David A. Pierce*, for the respondent.

OPINION

PIERCE, *Judge:* The Commissioner determined deficiencies in the income taxes of the petitioners for the years 1959 and 1960 in the respective amounts of $73.72 and $1,918.92.

The sole issue for decision is whether the amount of $315 which the petitioner husband embezzled from the United States in 1959 while employed as an assistant postmaster at Forest City, Iowa, and also the amount of $12,752.99 which he similarly embezzled in 1960, less reimbursement made in said year of $4,585.63, constitute taxable income to him for the respective years in which said embezzlements occurred.

All the facts have been stipulated and are so found. The pertinent facts so stipulated may be summarized as follows.

Marvin E. Nerem (herein referred to as the petitioner) and his wife, Evelyn L. Nerem, were residents of Forest City, Iowa, during each of the taxable years involved. They filed a joint Federal income tax return for each of said years with the district director of internal revenue at Des Moines.

The petitioner, during the year 1959 and until June 6, 1960, was employed by the U.S. Post Office Department as assistant postmaster at Forest City. While so employed in 1959, he unlawfully used and converted to his use funds belonging to the United States in the amount of $315; and while so employed in 1960, he similarly unlawfully used and converted to his use funds belonging to the United States in the amount of $12,752.99.

During the year 1960 said conversions of funds were discovered by the Post Office Department. Thereupon on June 6, 1960, petitioner submitted his resignation to said Department; and also during said year he forfeited and voluntarily assigned to said Department in partial reimbursement of the amounts so embezzled, the following:

| | |
|---|---:|
| Retirement fund for his benefit | $3,853.01 |
| Interest on said retirement fund | 363.51 |
| Accumulated annual leave | 255.94 |
| Unpaid salary | 113.17 |
| Total | 4,585.63 |

As regards that portion of the embezzled amounts not so reimbursed ($315 plus $12,752.99, total $13,067.99, less $4,585.63, being a balance of $8,482.36), this was paid to the United States on February 21, 1961, by the Liberty Mutual Insurance Co. pursuant to a blanket policy which the Government carried with that company to protect it from loss due to defalcation of moneys handled by employees of its Post Office Department. And thereafter on June 22, 1961, petitioner executed and delivered to said insurance company, his non-interest-bearing demand note in said amount of $8,482.36, representing the amount which he expressly recognized to be his liability to said insurance company for reimbursement of the amount that it had paid to the Government.

On June 13, 1960, petitioner appeared before a U.S. Commissioner in Mason City, Iowa, respecting said embezzlements, and waived preliminary hearing; bond was set and posted. Thereafter on June 21, 1960 a grand jury impaneled by the U.S. District Court for the Northern District of Iowa returned a criminal indictment against the petitioner on six counts, under which he was charged with violation of various specified provisions of the United States Code, by reason of his having unlawfully converted to his use in 1959 and 1960 certain funds of the United States (being portions of the embezzled funds here involved) ; and also by reason of his having made false and fictitious entries in the records of the post office, through recording the issuance of various money orders in sums less than the amounts of the money orders actually issued. Subsequently on June 28, 1960, petitioner was duly arraigned before said U.S. District Court; and he there entered a plea of guilty to each of the six counts of the indictment. On July 20, 1960, he was sentenced to serve 9 months in a U.S. Federal correctional institution. On January 9, 1961, he was paroled and returned to his home in Forest City.

In the joint income tax returns which petitioner and his wife filed for the years 1959 and 1960 that are here involved, no portion of the said embezzled funds were reported as income. The Commissioner however, in his notice of deficiency herein, determined that petitioner and his wife as joint makers of said returns were chargeable with additional income represented by embezzled funds, in the respective amounts of $315 for the year 1959 and $12,752.99 for 1960; and also he allowed for the year 1960, a deduction for "Reimbursement of embezzled funds" in the amount of $4,585.63. The Commissioner, in his said notice of deficiency, did not determine for either of said taxable years, any amount to be due or owing for an addition to tax for fraud under section 6653 (b) of the 1954 Code.

The answer to the question here presented for decision—i.e., whether the amount which petitioner embezzled in 1959 and the amount which

he similarly embezzled in 1960, less the reimbursements which he made in said year, constitute taxable income to him for the respective years in which such embezzlements occurred—will turn upon the effect of the decision of the Supreme Court in *James* v. *United States*, 366 U.S. 213 (1961), and that Court's prior decision in *Commissioner* v. *Wilcox*, 327 U.S. 404 (1946), which was reversed in the *James* case.

By way of background to these decisions, it should be observed that all general revenue acts enacted since 1913 [1] have included in the definition of "gross income," a provision similar to the following provision included in section 61(a) of the 1954 Code:

SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle [exceptions not applicable in the instant case], gross income means all income from whatever source derived * * *

By reason of these statutory provisions, it has been for many years a well-settled principle that an unlawful gain, as well as a lawful one, constitutes taxable income. *United States* v. *Sullivan*, 274 U.S. 259 (1927); *Rutkin* v. *United States*, 343 U.S. 130 (1952); *James* v. *United States, supra.*

Nevertheless, as regards moneys obtained by an individual through *embezzlement* (such as those involved in the instant case) there were, prior to the relatively recent decision of the Supreme Court in the *James* case (decided May 15, 1961), differing views and opinions expressed by various courts, including the Supreme Court, as to whether embezzled funds constituted taxable income to the embezzler. This confusion of judicial opinion centered on the facts that although an embezzler obtains wrongful *possession* of the converted funds, he does not acquire legal *title* thereto and has an obligation to return the same to the true owner. Such differences of judicial viewpoint are evident in the following decisions.

In the frequently cited case of *National City Bank of New York* v. *Helvering*, 98 F. 2d 93 (C.A. 2, 1938), affirming 35 B.T.A. 975, the Court of Appeals speaking through Judge Learned Hand, said:

If he [the taxpayer] holds with claim of right, he should be taxable as an owner, regardless of any infirmity of his title; no other doctrine is practically possible, and no injustice can result. * * *

---

[1] The original Income Tax Act of 1913, 38 Stat. 167, provided that "the net income of a taxable person shall include gains, profits, and income * * * from * * * the transaction of any *lawful* business carried on for gain or profit, or gains or profits and income derived from any source whatever * * *." (Emphasis supplied.)

In the 1916 Revenue Act, the definition of "income" contained in sec. 2 omitted the word "lawful" in referring to gains, profits, and income from "the transaction of any business"; and it continued to employ the phrase "or gains or profits and income derived from any source whatever."

The Internal Revenue Code of 1939, in sec. 22(a) thereof, similarly provided that: "'Gross income' includes * * * gains or profits and income derived from any source whatever."

In said case, the income subjected to tax consisted of an illicit and secret bonus or commission taken by the taxpayer on bonds which he held as president of a corporation, and hence there may be some question as to whether it constituted "embezzled" funds; but nevertheless the above quotation reflects a view of the court that *infirmity of title* in one who has unlawfully taken another's property, is not sufficient to prevent the wrongdoer from being charged with the receipt of taxable income.

Thereafter in *Estate of Thomas Spruance*, 43 B.T.A. 221 (1941), this Court (then designated the Board of Tax Appeals) applied the principle of said *National City Bank* opinion in an embezzlement case, and decided that embezzled funds constituted taxable income to the embezzler, notwithstanding the infirmity of his title. On appeal however, the Court of Appeals for the Fifth Circuit reversed our decision (sub nom. *McKnight, Administrator* v. *Commissioner*, 127 F. 2d 572 (1942)); and it held that since the embezzler "got no title, void or voidable, to what he took" no taxable gain arose from the embezzlement.

Subsequently the Court of Appeals for the Ninth Circuit, in *Wilcox* v. *Commissioner*, 148 F. 2d 933 (1945), adopted a view similar to that of the Fifth Circuit in the *McKnight* case; and it reversed a Memorandum Opinion of this Court (dated Aug. 21, 1944) in which we again had held that embezzled funds constituted income taxable to the embezzler. We, in so holding, had relied on two similar decisions of our Court, which had been affirmed subsequent to the *McKnight* case: *Kurrle* v. *Helvering*, 126 F. 2d 723 (C.A. 8, 1942), affirming a Memorandum Opinion of this Court (dated Jan. 30, 1941) in which proceeds of embezzlement were held to be taxable; and *Humphreys* v. *Commissioner*, 125 F. 2d 340 (C.A. 7, 1942), affirming 42 B.T.A. 857, certiorari denied 317 U.S. 637, in which it was held that ransom money obtained by a kidnaper whose title was no better than that of an embezzler, constituted income under section 22(a) of the Revenue Act of 1928.

Thereafter, the Supreme Court granted a writ of certiorari in the *Wilcox* case; and in its above-cited opinion entered February 25, 1946, it affirmed the Ninth Circuit's reversal of this Court's decision, and in substance approved the principle of the Fifth Circuit's decision in the *McKnight* case that since the embezzler did not obtain good title and was under a duty to return the funds to the owner, he did not derive "gain" and the embezzled funds did not constitute taxable income to him.

But the Supreme Court's decision in the *Wilcox* case did not for long lay the problem to rest; for in 1952 (which was prior to the taxable years involved in the instant case) the Supreme Court decided *Rutkin* v. *United States*, 343 U.S. 130, and therein expressed views

which were out of harmony with *Wilcox*. In said *Rutkin* case the Court stated in part:

An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, *as a practical matter*, he derives readily realizable economic value from it. * * *

* * * "collection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant." National City Bank v. Helvering, 2 Cir. 98 F. 2d 93, 96 [the case above cited upon which this Court had previously relied]. There is no adequate reason why assailable *unlawful* gains should be treated differently in this respect from assailable *lawful* gains. Certainly there is no reason for treating them more leniently. * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

We do not reach in this case the factual situation involved in Commissioner of Internal Revenue v. Wilcox, * * *. We limit that case to its facts. * * * [Emphasis supplied.]

And thereafter on May 15, 1961, the Supreme Court decided the case of *James* v. *United States, supra;* and it therein expressly overruled its prior decision in the *Wilcox* case. In the opinion written by Mr. Chief Justice Warren in the *James* case, wherein the judgment of the Court was announced, it is stated in part:

examination of the reasoning used in *Rutkin* leads us inescapably to the conclusion that *Wilcox* was thoroughly devitalized.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

We believe that *Wilcox* was wrongly decided * * *.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

that case is overruled. * * *

Following the said overruling of the *Wilcox* case, this Court decided *L. M. Muldrow*, 38 T.C. 907 (1962) ; and we therein held that where the taxpayer had, in 1955, "embezzled" 812 bales of cotton and received the proceeds from the sale thereof for his own use, these proceeds constituted taxable income to him for the year in which the conversion and sale occurred. Also subsequent to said demise of the *Wilcox* case, the Court of Appeals for the Sixth Circuit in *Leaf* v. *Commissioner*, 295 F. 2d 503 (C.A. 6, 1961), affirmed per curiam the decision of this Court in 33 T.C. 1093, wherein we had held that where the taxpayer had diverted corporate funds to his own use in 1952 and had not returned the same, such diverted funds constituted taxable income to the taxpayer for the year of the diversion. We, in our decision therein, had relied on the principle which the Supreme Court announced in the *Rutkin* case; but the Sixth Circuit, in affirming our decision, stated that it was in conformity not only with *Rutkin* but also with the Supreme Court's decision in *James* v. *United States, supra*.

Based on the foregoing, we decide the issue in the instant case in favor of the respondent; and we hold that the funds here involved,

which petitioner embezzled and converted to his own use in 1959 and 1960, constitute taxable income to him under section 61(a) of the 1954 Code for the respective years in which said embezzlements occurred.

There is no merit to petitioner's position that, since his embezzlements occurred in 1959 and 1960, at a time when the *Wilcox* case still had vitality and had not yet been overruled, the principle of that case should be controlling here. To the contrary, the Supreme Court said in *Fleming* v. *Fleming*, 264 U.S. 29, 31:

> The effect of the subsequent decisions is not to make a new law but only to hold that the law always meant what the court now says it means. The court has power to construe a legislative act, but it has no power by change in construction to date its passage as a law from the time of the later decision. * * *

Also, petitioner can obtain no benefit here from the fact that in *James* v. *United States*, *supra*, the Supreme Court reversed the criminal conviction of James for failing to report as gross income certain funds which he had embezzled in 1951 through 1954, when the *Wilcox* case was in effect. The reason for this was explained by the Chief Justice in his opinion in the *James* case as follows:

> We believe that the element of *willfulness could not be proven in a criminal prosecution* for failing to include embezzled funds in gross income in the year of misappropriation so long as the statute contained the gloss placed upon it by *Wilcox* at the time the alleged *crime* was committed. * * * [Emphasis supplied.]

In the instant case, however, no proof of "willfulness * * * in a criminal prosecution" is involved; nor is there involved any attempt by the Commissioner to charge petitioner with an addition to tax for fraud, under section 6653(b) of the 1954 Code. Rather, we are concerned here only with "deficiencies" in taxes which petitioner and his wife reported in their joint returns; and in the determination of such deficiencies, the elements of *willfulness* or *nonwillfulness* are not material factors.

*Decision will be entered for the respondent.*