Estate of Wallace P. Geiger, Deceased, Warren G. Dunkle, Executor, and Burnice I. Geiger v. Commissioner.
Estate of Geiger v. Commissioner
Docket No. 93982.
United States Tax Court
T.C. Memo 1964-153; 1964 Tax Ct. Memo LEXIS 183; 23 T.C.M. (CCH) 914; T.C.M. (RIA) 64153; June 3, 1964
Melford M. Lothrop, 370 Orpheum Electric Bldg., Sioux City, Iowa, for the petitioners. David A. Pierce, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of petitioners *184 and additions to tax under section 6653(b) of the Internal Revenue Code of 1954 for fraud for the following years and in the indicated amounts: Addition to tax
Sec. 6653(b),
Year
Deficiency
I.R.C. 1954
1954
$76,101.94
$38,050.97
1955
79,429.54
39,714.77
1956
78,244.50
39,122.25
1957
79,457.99
39,728.99
1958
80,420.57
40,210.28
1959
83,042.23
41,521.12
Issues presented by the pleadings are the correctness of the respondent's action (1) in determining that in each of the years 1954 through 1959 the petitioners realized taxable income in the amount of $125,000 which was not reported in their income tax returns for the respective years, (2) in disallowing deductions taken by petitioner for medical expense for the years 1955 through 1959, (3) in determining additions to tax under section 6653(b) of the Code of 1954 for the years 1954 through 1959, and (4) in failing to determine that assessment of income tax for the years 1954 through 1956 is barred by the expiration of the period of limitations. The respondent has conceded error as to issue 3, which leaves issues 1, 2, and 4 for determination. Findings of Fact
*185 Some of the facts have been stipulated and are found accordingly. Wallace P. Geiger and Burnice I. Geiger, husband and wife, resided in Sheldon, Iowa, during the years 1954 through 1959 and filed their joint Federal income tax returns for those years with the district director in Des Moines, Iowa. Wallace P. Geiger died testate on July 23, 1961, and since July 31, 1961, Warren G. Dunkle has been the duly appointed and acting executor of his estate. In the summer of 1921, when 18 or 19 years of age and after attending college for one year, Burnice I. Geiger, sometimes hereinafter referred to as the petitioner, was employed by Sheldon National Bank, sometimes hereinafter referred to as the Sheldon Bank, Sheldon, Iowa. She continued in the employment of the bank until January 16, 1961, when her employment there terminated. The petitioner's original employment at the bank was as bookkeeper. At that time she was without training as a bookkeeper and subsequently during her employment there she learned everything she knew about bookkeeping. Sometime in 1930 she was placed in charge of the bookkeeping department of the bank and at or about that time she also became assistant cashier *186 of the bank. During the period comprising approximately the last 30 years of her employment by Sheldon Bank, the petitioner pursued a course of conduct wherein she, without authorization of the bank and unlawfully, appropriated and converted money of the bank to her own use. Throughout such period of her employment by the bank, the petitioner appropriated and converted to her use in transactions on the Board of Trade an average of approximately $1,000 a month of the bank's money. In the same period of her employment by the bank she also appropriated and converted to her use in making loans and gifts to various individuals and firms undisclosed amounts of the bank's money. The petitioner did not keep any book record of the bank's funds which she unlawfully appropriated and converted to her own use but did keep adding machine slips and written slips showing the amounts thereof. Prior to January 16, 1961, a means employed by petitioner to conceal from bank examiners her unlawful appropriation and conversion of funds of the bank was the withdrawal by her from the files of the bank about the time she thought the examiners would come, ledger sheets of customers sufficient to make it *187 appear that the records of the bank correctly reflected the bank's condition. During the course of an examination of Sheldon Bank by Federal bank examiners, they, on January 16, 1961, discovered that the bank's books failed to balance. They asked petitioner to look for the shortage. She informed them that it would be of no use, that there was a shortage in the bank's funds and then told them what she had done. She spent the remainder of the day "setting up the books" of the bank for the Federal bank examiners so that they could ascertain exactly what she had done. With the exception of the president of Northern Biochemical Corporation, who was involved in the shortage of the bank's funds and who was convicted of a conspiracy with petitioner and is now serving a term in a Federal penitentiary, the petitioner is the only one who was involved in and was responsible for the shortage in the funds of Sheldon Bank. On the same day, January 16, 1961, the Federal Deposit Insurance Corporation took charge of the affairs of Sheldon Bank for the purpose of the liquidation thereof. On January 30, 1961, the petitioner, in a criminal proceeding against her in the United States District Court *188 for the Northern District of Iowa, Western Division, waived prosecution by indictment and consented that the proceeding might be by information. Thereupon there was filed an information wherein the petitioner was charged: (1) with 3 counts for embezzling and converting funds of Sheldon Bank in 1960, (2) with 8 counts for causing false entries to be made on the records of the bank during the years 1957 through 1960, and (3) with 24 counts for the willful honoring and payment of, or causing to be paid, during 1960 and 1961, checks drawn on the bank by parties who had no funds on deposit at the bank and checks drawn on the bank by other parties who had insufficient funds on deposit in the bank for making payment of such checks when presented. On the same day, January 30, 1961, the petitioner, appearing in person and by counsel of her own employment, entered a plea of guilty to all 35 counts of the information. Thereafter, and on February 17, 1961, petitioner, appearing in person and by the same counsel, was sentenced to serve 5 years on each of the 3 counts for embezzlement, counts I, II, and III, with the sentences to run consecutively, or a total of 15 years, and was sentenced to *189 serve 5 years on each of the remaining 32 counts, with the sentences to run concurrently with the 5-year sentence imposed on count I. The petitioner is now serving the sentence at the Federal Reformatory for Women, Alderson, West Virginia. There is no showing that the abovementioned information containing 35 counts, comprising three groups or classifications of crimes, was intended to or did include all of the unlawful acts of the petitioner with respect to the affairs of Sheldon Bank during the period comprising approximately the last 30 years of her employment by it. Beginning on September 5, 1947, and continuing thereafter until June 22, 1961, Wallace P. Geiger, petitioner's husband, owned and operated as his individual business a hardware and seed business in Sheldon, Iowa, under the name of O'Brien County Seed Company. He either turned over to petitioner or permitted her to have full charge of handling the financial matters relating to his hardware and seed business and relied on her for information as to the profits of the business. The petitioner prepared the joint Federal income tax returns filed by her and her husband for the years in issue and in doing so she knowingly *190 and intentionally overstated in the returns the actual amounts of the sales of his above-mentioned hardware and seed business. The amounts of such overstatements of gross income were as follows for the indicated years: 1954
$ 9,860.37
1955
17,129.74
1956
19,472.49
1957
10,801.70
1958
15,948.24
1959
16,042.56 In the income tax returns for the foregoing years the income from the hardware and seed business was reported on an accrual basis and the salary received by petitioner from Sheldon Bank in such years was reported on the cash receipts basis. The gross income reported by Wallace and petitioner in their joint Federal income tax returns for 1954, 1955, and 1956 was as follows: 1954
1955
1956
Bank salary
$ 4,004.00
$ 4,279.00
$ 4,851.00
Dividends
1,043.40
1,238.99
1,746.52
Interest
43.96
17.79
33.17
Capital gain
1,617.04
Gross income from business of Wallace P.
89,994.64
101,557.20
86,733.03
Geiger
Total reported
$96,703.04
$107,192.98
$93,363.72
Less: overstatement in the returns of
9,860.37
17,129.74
19,472.49
gross income from business
Corrected gross income reported
$86,842.67
$ 90,063.24
$73,891.23
*191 Wallace and petitioner timely filed their Federal joint income tax returns for 1954, 1955, and 1956 on or before April 15, 1955, April 15, 1956, and April 15, 1957, respectively, and on February 23 and February 24, 1961, executed a consent to the extension to June 30, 1962, of the period for assessment of income tax for the taxable year 1954 under section 6501(e) of the Code of 1954. The consent was executed by the respondent on February 28, 1961. Thereafter on April 7, 1961, the respondent made a jeopardy assessment of the deficiencies in issue and on June 1, 1961, sent notices of his determination of such deficiencies. In determining the deficiencies in issue the respondent increased the taxable income of Wallace and petitioner for each of the years 1954 through 1959 by an amount of $125,000 with the following explanation: It is determined that you realized taxable income in the amount of $125,000.00 which was not included as income on your tax return. Accordingly, your taxable income is increased $125,000.00. The omission is computed as follows: Total amount received
$2,174,799.90
Less: Net overdraft-Northern Biochemical
Corp. for 1960 and January 1961
$1,094,798.07
Other estimated shortages for 1960
and January 1961
80,001.83
1,174,799.90
Shortage to December 31, 1959
$1,000,000.00
Shortage allocated per year for period
1952 through 1959
$ 125,000.00
*192 Opinion The first issue for determination is what amounts, if any, are to be included in the taxable income of Wallace P. Geiger and petitioner for the years 1954 through 1959 on account of the petitioner's unlawful appropriation and conversion to her use of money belonging to Sheldon Bank. Pointing out that in Commissioner v. Wilcox, 327 U.S. 404 (1946), the Supreme Court held that embezzled money did not constitute taxable income to the embezzler in the year of embezzlement under section 22(a) of the Internal Revenue Code of 1939, and recognizing that in James v. United States, 366 U.S. 213 (1961), the Court expressly overruled the Wilcox case, the petitioners contend that the rule of the James case is to be applied prospectively and not retroactively to cover the taxable years here in issue. Since the filing of briefs herein, a contention like that made here by petitioners has been decided adversely to them in Marvin E. Nerem, 41 T.C. 338 (1963), on appeal (C.A. 8, March 9, 1964). In the Nerem case the taxpayer-husband, while employed as an assistant postmaster and during 1959 and 1960 when the decision of the Supreme Court in the Wilcox *193 case was in effect, embezzled funds of the United States. There, as here, no question was involved as to liability for an addition to tax for fraud for failure to report the embezzled funds as income for the years in which received. In holding that the embezzled funds there involved constituted taxable income for the years in which received within the meaning of section 61(a) of the Code of 1954, we applied the principles of Rutkin v. United States, 343 U.S. 130 (1952), and James v. United States, supra, and pointed out: (1) that by reason of statutory provisions it has been a well-settled principle that an unlawful gain, as well as a lawful one, constitutes taxable income, (2) that the effect of a reversal by the Supreme Court of one of its prior decisions is not to make a new law but only to hold that the law always meant what the Court in its reversing decision says that it means, (3) that the Supreme Court in the James case, in reversing the criminal conviction of James, grounded its action on its belief that the element of willfulness could not be proven in a criminal prosecution for failure to include embezzled funds in gross income in the year of misappropriation *194 so long as the statute, section 22(a) of the Code of 1939, contained the gloss placed upon it by the Wilcox case at the time the alleged crime was committed and (4) that in the Nerem case no "proof of willfulness * * * in a criminal prosecution" was involved but merely the deficiencies in taxes which the taxpayer and his wife reported on their joint income tax returns and that in a determination of such deficiencies, the elements of willfulness or nonwillfulness were not material factors. Finding nothing in the factual situation presented in the instant case to warrant otherwise, we are of the opinion and accordingly hold that our decision in the Nerem case is applicable and controlling here. Accordingly the contention of the petitioners is not sustained. Having held as above, we now will consider an alternative contention of the petitioners that the only amounts, if any, of the shortages of Sheldon Bank which correctly can be included in the income of the petitioner for the years in issue as income of the petitioner is limited to the amounts she "received in cash or by expenditures made by the bank for her own use," which the petitioners state on brief were the following amounts *195 for the indicated years: Amount includable as
Year
income of petitioner
1954
$12,249.88
1955
8,842.13
1956
5,632.89
1957
27,057.84
1958
18,682.27
1959
17,868.17
Total
$90,333.18
Respecting the inclusion in gross income of wrongful appropriations by a taxpayer, the Supreme Court in James v. United States, supra, said: When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil v. Burnel, supra, at p. 424. In such case, the taxpayer has "actual command over the property taxed - the actual benefit for which the tax is paid," Corliss v. Bowers, supra. This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent *196 year, the taxpayer must nonetheless report the amount as "gross income" in the year received. United States v. Lewis, supra; Healy v. Commissioner, supra. We do not believe that Congress intended to treat a law-breaking taxpayer differently. Just as the honest taxpayer may deduct any amount repaid in the year in which the repayment is made, the Government points out that, "if, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income." * * * In a deposition of petitioner taken after her incarceration, she testified to the effect that she kept no book record of the shortage in funds of Sheldon Bank but that she kept a slip of paper - an adding machine slip or a written slip - of each shortage so that she would know what the shortage was and that she always kept an accurate account; that upon informing the Federal bank examiners of the shortage in the bank's funds on January 16, 1961, she spent the remainder of the day "setting up the books" of the bank for them so they could ascertain exactly what she had done; that most of the bank's shortage resulted from her cashing checks drawn on the bank by persons *197 who did not have on deposit in the bank funds with which to pay the checks; that some of such checks were her own, some were her husband's, and the remainder were the checks of others; that as to the checks of such others which she cashed, all of the drawers thereof, except Northern Biochemical Corporation, considered that they were obtaining the money from her personally. The petitioner's testimony indicates that also included in the latter group were persons to whose accounts on the records of the bank the petitioner had credited as deposits sums of money when in fact the bank had received no money from those persons or from anyone else with respect to such credits. Although the petitioners have placed in the record other eivdence to the effect that the petitioner "kept an accurate account of her defalcations for which she was responsible#" and which evidence tends to support the testimony of the petitioner that she kept an accurate account of her appropriations and conversions of the bank's funds, the petitioners have not furnished us with a copy of such records as the petitioner may have kept or a copy of such writing as she may have made in "setting up the books" of the bank for *198 the Federal bank examiners so that they could ascertain what she had done. By stipulation the parties have placed in evidence Exhibit 9 which reads as follows: WHEREAS, The Sheldon National Bank of Sheldon, Iowa, has suspended operations and has been taken over under the provisions of Federal law by the Federal Deposit Insurance Corporation as Receiver thereof; and WHEREAS, Mrs. Burnice Geiger of Sheldon, Iowa, did while an officer of said The Sheldon National Bank of Sheldon, Iowa make certain loans and gifts to various individuals and firms from funds belonging to the said Bank; and WHEREAS, in many cases, the persons with whom such transactions were had may have been under the impression that the transactions were with the said Burnice Geiger personally and not with the said Bank; and WHEREAS, in some or many cases the said persons are reluctant to repay the consideration of such transactions to the Receiver of The Sheldon National Bank without a release of possible liability to the said Burnice Geiger. NOW, THEREFORE, in recognition of her obligation to said Bank and the true state of the transactions, the undersigned, Mrs. Burnice Geiger, hereby assigns and sets over *199 unto the Receiver of said Bank, any and all right, title or interest that she may have in any of said transactions and hereby releases and exonerates any of the persons connected therewith from any obligation to her personally and requests that they pay the balance of any obligation which they may have to the Receiver of said bank. EXECUTED at Sioux City, Iowa, this 16th day of February, 1961. /s/ Burnice I. Geiger / Mrs. Burnice Geiger WITNESSES: /s/ Franklin E. Gill /s/ Warren G. Dunkle The witnesses to the petitioner's execution of the foregoing instrument had appeared as counsel for petitioner when on January 30, 1961, she entered a plea of guilty to the information. They also on February 17, 1961, appeared as her counsel when she was sentenced to prison. One of the foregoing counsel is involved in the instant case as executor of the estate of Wallace P. Geiger, one of the petitioners herein. The other counsel of petitioner is one of the counsel of the petitioners in the instant case and signed the petition here involved as well as the briefs of the petitioners. Under the foregoing circumstances it would appear highly improbable that petitioner's attorneys would have *200 participated in her execution of the instrument of February 16, 1961, to the extent they did unless they were well aware that there was factual support for the recitals contained therein. The above-quoted instrument executed by petitioner on February 16, 1961, recites, among other things, that petitioner while an officer of Sheldon Bank, made loans and gifts to "various individuals and firms" from funds belonging to the bank, that in "many cases" the persons with whom she had entered into such transactions may have been under the impression that the transactions were entered into with her personally, and that in "some or many cases" said persons are reluctant to repay the consideration of such transactions to the receiver of the bank without a release of possible liability to the petitioner. In view of the fact that a period of 1 month had elapsed between the date on which the Federal Deposit Insurance Corporation took over the affairs of the bank, January 16, 1961, and the date on which the petitioner executed the above-quoted instrument, and in view of the preceding mentioned recitals contained in the instrument, it would appear likely that at the time the petitioner executed the *201 instrument of February 16, 1961, the various individuals and firms referred to therein were not only well known to petitioner but were in all probability known to the receiver of the bank as well. However the petitioners have not informed us as to who the recipients of such loans and gifts were or as to the dates or the amounts thereof. The parties by stipulation have placed in the record Exhibit 3 described as "a copy of the summary prepared by Federal Deposit Insurance Corporation auditors for The Sheldon National Bank, Sheldon, Iowa - In Receivership N.R. 261 - Shortage Account - Allocation of Shortages by Years and the unallocated shortages" and Exhibit 4 described as copies of "summary schedules of the allocations of shortages prepared by Federal Deposit Insurance Corporation auditors for The Sheldon National Bank, Sheldon, Iowa - In Receivership N.R. 261 - from which Exhibit 3 was prepared." In Exhibit 3 the total shortage in the funds of Sheldon Bank is shown as $2,175,283.51, of which $464,874.91 is shown as unallocated shortage items and the remainder, $1,710,408.60, sometimes hereinafter referred to as allocated shortage, is shown as allocated to the following years in *202 the indicated amounts which in turn were totals of amounts allocated to the indicated number of specified persons, firms, corporations, groups, etc.: Number of
persons,
firms,
Year
Amount
etc.
1941 and prior
$ 4,126.96
2
1946
1,800.00
1
1947
12.11
1
1948
6,939.94
5
1949
1950
30,208.65
5
1951
79,909.47
6
1952
38,779.79
4
1953
16,004.86
4
1954 [1]
37,681.55
6
1955 [1]
31,421.05
7
1956 [1]
33,463.48
5
1957 [1]
77,841.36
9
1958 [1]
92,003.75
13
1959 [1]
65,689.69
17
1960
1,083,127.08
24
1961
111,398.86
4
Total
$1,710,408.60
In stipulating Exhibits 3 and 4 in evidence the parties have not stipulated or agreed that the exhibits accurately or correctly reflect the factual situations as to the matters shown therein. Nor have the factual situations as to such matters been established otherwise by evidence. As a consequence the exhibits, for present purposes, do not constitute proof of the correctness of the items and amounts and the allocations thereof to the years and parties shown or set forth therein but merely constitute a reflection of the unsupported opinions and *203 conclusions of the persons who prepared the exhibits, namely, Federal Deposit Insurance Corporation auditors, none of whom appeared as a witness in the instant case. In this state of the record the exhibits are without probative effect as to the actual amount of the shortage in the funds of Sheldon Bank or as to the years and parties to whom the shortage, whatever may have been the correct amount thereof, was properly allocable. In this situation it follows that contentions and arguments predicated on the assumption that Exhibits 3 and 4 constitute proof of what is set forth therein are lacking in factual support. However, assuming that the exhibits constitute proof of the matters shown therein, we would be unable from a consideration thereof in connection with the remainder of the record and the various contentions and arguments made by petitioners to find that the petitioners have established that the only amounts of the shortage of Sheldon Bank which correctly can be included in the income of the petitioners as income of the petitioner for the years in issue were as stated by petitioners in their alternative contention. In determining the deficiencies in issue the respondent determined *204 the total shortage of Sheldon Bank as $2,174,799.90 or $483.61 less than the total shortage shown in Exhibit 3 discussed above. He determined that $1,174,799.90 or $19,726.04 less than the amount shown in Exhibit 3, of the shortage was allocable to 1960 and 1961, years subsequent to those here in issue, and that the remainder, $1,000,000 was allocable in equal amounts, $125,000, to each of the 8 years 1952 through 1959. He accordingly increased the taxable income of petitioners for each of the years in issue by $125,000. His determination is presumed to be correct and the burden was on the petitioners to show that it was not. In our opinion the petitioners have failed to discharge their burden of proof. However, the respondent, for reasons not stated, has discharged part of such burden of the petitioners as a result of the following statement made by him in his opening brief: Respondent concedes that the additional income, taxable to the petitioners, does not exceed the following: 1954
1955
1956
$37,681.55
$31,421.05
$33,463.48
$77,841.36
Unallocated Embezzlement [2]
15,495.91
15,495.91
15,495.91
Additional Gross Income
$53,177.46
$46,916.96
$48,959.39
Less: Embezzlement Already Reported [3]
9,860.37
17,129.74
19,472.49
Omitted Income
$43,317.09
$29,787.22
$29,486.90
*205 1957
1958
1959
Allocated
Embezzlement
[1]
$37,681.55
$ 92,003.75
$65,689.69
Unallocated Embezzlement [2]
15,495.91
15,495.91
15,495.91
Additional Gross Income
$93,337.27
$107,499.66
$81,185.60
Less: Embezzlement Already Reported [3]
10,801.70
15,948.24
16,142.56
Omitted Income
$82,535.57
$ 91,551.42
$65,043.04
The foregoing concession will be given effect in a recomputation of deficiencies. The corrected gross income reported by the petitioners in their income tax returns for the taxable years 1954 through 1956 was as follows: 1954
$86,842.67
1955
90,063.24
1956
73,891.23
Gross *206 income of petitioners for the taxable years 1954 through 1956 which was omitted from their income tax returns for such years was, in accordance with the respondent's concession, as follows: 1954
$43,317.09
1955
29,787.22
1956
29,486.90
Since the petitioners omitted from their gross income for each of the taxable years 1954 through 1956 an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return and since assessment of the deficiencies for such taxable years were made by respondent on April 7, 1961, which was within 6 years after the returns for such years were filed, the period of limitations for making assessment of the deficiencies had not expired at the time the deficiencies were assessed. Section 6501(e)(1) of the Code of 1954. In determining the deficiencies for the following years the respondent disallowed deductions of the indicated amounts taken by petitioners for medical expenses: 1955
$396.34
1956
277.51
1957
786.07
1958
680.50
1959
827.69
In their petition the petitioners assigned error as to the respondent's disallowance of the foregoing deductions and the respondent *207 in his answer denied error. The petitioners have not submitted any evidence directed to this issue nor have they urged it either at the hearing or on brief. Accordingly we assume they have abandoned the issue and sustain the respondent's disallowance of the deductions. Decision will be entered under Rule 50. Footnotes
1. Taxable years in issue herein.↩
2. These amounts are computed by dividing the unallocated shortage items of Exhibit 3 [$464,874.91] over a thirty-year period, the approximate period of the embezzlement. ↩
3. These amounts are determined by reference to the Amount of Overstatement of Exhibit 6. [Overstatements of income shown in returns of petitioners on account of overstatement by petitioner of sales of Wallace P. Geiger's hardware and seed business.]↩
1. These amounts are the totals of the applicable columns of Exhibit 3. [Set out above.] ↩