Newell W. Emerson and Collette M. Emerson v. Commissioner.
Emerson v. Commissioner
Docket No. 4126-63.
United States Tax Court
T.C. Memo 1965-185; 1965 Tax Ct. Memo LEXIS 148; 24 T.C.M. (CCH) 967; T.C.M. (RIA) 65185; June 30, 1965
*148 The petitioner, Newell W. Emerson, illegally appropriated to his own use in 1959, 1960, and 1961, funds of an organization of which he was treasurer. Held: (1) The appropriations of funds constituted embezzlements in each year. (2) The embezzled funds constituted income to him under section 61(a), 1954 Code, for each year in which the embezzlements occurred under the principles of James v. United States, 366 U.S. 213, which overruled Commissioner v. Wilcox, 327 U.S. 404; and Rutkin v. United States, 343 U.S. 130, as this Court has held in Marvin E. Nerem, 41 T.C. 338. Charles J. McDonough, 930 Walbridge Bldg., Buffalo, N. Y. for the petitioners. Edward H. Hance, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax for the taxable years 1959, 1960, and 1961, and additions to the tax for negligence under section 6653(a), 1954 Code, as follows: Year
Deficiencies
Sec. 6653(a)
1959
$1,278.45
$ 63.92
1960
6,426.78
321.34
1961
2,249.91
112.50
The question is whether, in each of the taxable years, a sum of money which Newell W. Emerson illegally obtained from an organization represented income under section 61(a), 1954 Code. Findings of Fact All of the facts have been stipulated. The stipulated facts are incorporated herein by this reference and are found as stipulated. The petitioners reside in Williamsville, New York. They filed a joint return, Form 1040A, for each of the taxable years with the district director of internal revenue at Buffalo, New York. Newell W. Emerson is referred to hereinafter as the petitioner. The issue presented relates only to him. Petitioner *150 was the treasurer of the St. Nicholas Buffalo Federal Credit Union of Buffalo, New York, hereinafter called the Credit Union, from February 1952 to on or about January 19, 1962. The Credit Union entered upon liquidation in August 1958. Various savings bank accounts were opened in the name of the Credit Union in order to obtain interest on the funds of the Credit Union during the period it was undergoing liquidation. Newell W. Emerson opened personal accounts in the same savings banks in which he opened accounts in the name of the St. Nicholas Buffalo Federal Credit Union. From time to time during the years 1959, 1960, and 1961, Emerson deposited funds belonging to the Credit Union in his personal accounts. The wrongful appropriation of funds to his own use is more fully set forth below: Savings Bank Accounts of
Date
Newell W. Emerson
Amount
1959
9-30
Kensington Federal Savings &
Loan Assn.
$1,000.00
11-30
Kensington Federal Savings &
Loan Assn.
1,000.00
Total in 1959
$2,000.00
1960
2-23
Western Savings Bank
$1,000.00
4-28
Western Savings Bank
1,500.00
5-24
Western Savings Bank
1,500.00
4-11
Western Savings Bank
600.00
11- 9
Bank of Buffalo
800.00
11-23
Bank of Buffalo
400.00
12-13
Bank of Buffalo
2,200.00
Total in 1960
$8,000.00
1961
1-11
Bank of Buffalo
$1,500.00
2-13
Bank of Buffalo
2,000.00
2-28
Bank of Buffalo
1,400.00
3-10
Bank of Buffalo
1,000.00
8- 8
Bank of Buffalo
589.39
4-11
Buffalo Savings Bank
500.00
8- 8
Buffalo Savings Bank
19.29
9-12
Buffalo Savings Bank
500.00
5- 9
Erie County Savings Bank
400.00
8- 8
Erie County Savings Bank
313.93
10-16
Erie County Savings Bank
500.00
8-18
Western Savings Bank
3.13
9-12
Western Savings Bank
500.00
12-12
Western Savings Bank
600.00
Total in 1961
$9,825.74
*151 In addition to the funds that Emerson deposited in his personal savings bank accounts, he also converted to his own use receipts of the Credit Union in the following amounts: $4,509.41 in 1959; $14,599.16 in 1960; and $2,647.46 in 1961. The total amount in each of the years 1959, 1960, and 1961, of the funds of the Credit Union which Emerson converted to his own use and deposited in his personal savings accounts in banks was as follows, for each year: 1959
1960
1961
Deposits in
banks
$2,000.00
$ 8,000.00
$ 9,825.74
Own use
4,509.41
14,599.16
2,647.46
Total
$6,509.41
$22,599.16
$12,473.20
Vincent Jordan, an examiner employed by the Bureau of Federal Credit Unions, made an examination of the books and records of the St. Nicholas Buffalo Federal Credit Union. The examination disclosed shortages in the accounts of the St. Nicholas Buffalo Federal Credit Union for the years 1959, 1960, and 1961 in the respective amounts of $6,509.41, $22,599.16, and $12,473.20. These shortages consisted of the receipts of the Credit Union which Emerson diverted to his personal use, and the additional funds belonging to the Credit Union which Emerson deposited *152 in his personal savings accounts in banks, which are set forth above. The Credit Union recovered with respect to Emerson's appropriations of its funds during 1961, the respective amounts of $1,224.77 and $865.10, totaling $2,089.87, so that for 1961, the total net amount of Emerson's appropriations was $10,383.33. Upon auditing petitioners' returns for the taxable years, respondent added to the taxable income of Emerson the respective amounts of his appropriations of the Credit Union's funds. Respondent added to Emerson's taxable income for 1959 and 1960, $6,509.41 and $22,599.16, respectively. He added the net amount of $10,383.33 to Emerson's income for 1961, after allowing him as offsets against the total appropriation of $12,473.20 in 1961, the sum of $1,244.77, which was recovered by the Credit Union from Emerson's personal bank accounts; and $865.10, which was included in the 1961 receipts of the Credit Union and was deposited by Emerson in the bank account of the Credit Union during January 1962. The total sum recovered in 1961 was $2,089.87. The St. Nicholas Buffalo Federal Credit Union has been reimbursed by the surety company for the shortages set forth above. On *153 or about March 1, 1962, Newell W. Emerson was indicted by the Federal Grand Jury in the United States District Court for the Western District of New York. The indictment contained 8 counts alleging various crimes arising out of (a) embezzlement from the Credit Union (Violation, 18 U.S.C. Sec. 657), and (b) making false entries in the books of the Credit Union (Violation, 18 U.S.C. Sec. 1006), all having to do with the defendant Emerson's handling of the funds of the St. Nicholas Buffalo Federal Credit Union. On November 18, 1963, Emerson pleaded guilty to count 1 of the indictment, charging him with making of false entries in the books of the St. Nicholas Buffalo Federal Credit Union (Violation, 18 U.S.C. Sec. 1006). On December 2, 1963, in the United States District Court for the Western District of New York, Emerson was sentenced to serve 18 months in prison. Execution of the sentence was suspended. Emerson was placed on probation for a period of 5 years, and the Court ordered him to make restitution of all of the funds which he had embezzled from the St. Nicholas Buffalo Federal Credit Union. Also, on December 2, 1963, all *154 of the other 7 counts of the indictment were dismissed. On December 30, 1964, Judge John O. Henderson, Judge of the United States District Court for the Western District of New York, approved a plan to implement the restitution, whereby Emerson, commencing January 16, 1965, was to pay over to the United States Probation Office at Buffalo, for the benefit of the St. Nicholas Buffalo Federal Credit Union, its assignees and sureties, 7 percent of his net earnings, until all of the sums which Emerson had taken from the Credit Union were repaid in full. Since January 16, 1965, Emerson has made during 1965 the following payments to the office of the Clerk of the United States District Court in Buffalo, pursuant to the order of the United States District Court, in the total amount of $144.18. Date of 1965
Amounts
Payments
Paid
1- 9
$ 10.20
1-16
8.69
2- 2
8.68
2- 9
12.20
2-15
10.46
2-24
11.15
3- 2
9.59
3- 9
10.74
3-16
9.06
3-23
9.56
3-30
9.30
4- 6
9.18
4-13
13.74
4-21
11.63
Total
$144.18
On July 27, 1962, New York State Credit Union League, Inc., as assignee of the St. Nicholas Buffalo Federal Credit Union, instituted an action in the *155 Supreme Court, Erie County, New York, against Newell W. Emerson and others, as defendants, to recover various sums allegedly embezzled by Newell W. Emerson, as set forth above. On July 3, 1962, the Employers Mutual Liability Insurance Company of Wisconsin instituted an action in the Supreme Court, Erie County, New York, against Newell W. Emerson, as defendant, alleging that it had reimbursed the St. Nicholas Buffalo Federal Credit Union, under a Credit Union Blank Fidelity Bond covering Newell W. Emerson, in the net amount of $39,570.35, for the funds embezzled by Newell W. Emerson from the St. Nicholas Buffalo Federal Credit Union. [1]
On April 16, 1964, judgment was entered in the Supreme Court of Erie County in favor of the New York State Credit Union League, *156 Inc., as assignee of St. Nicholas Buffalo Federal Credit Union, against the defendant, Newell W. Emerson, only, in the total sum of $3,803.04, in the above-described action. On June 17, 1964, judgment was entered in the Supreme Court of Erie County, in favor of the Employers Mutual Liability Insurance Company of Wisconsin, against the defendant, Newell W. Emerson, in the above-described action, in the total sum of $45,119, [2] representing the total amount of the reimbursement paid by the insurance company to the St. Nicholas Buffalo Federal Credit Union for the funds embezzled from the Credit Union by Emerson. Both of the judgments described above are now liens upon all of the *157 property, real and personal, of Newell W. Emerson. Employers Mutual Liability Insurance Company of Wisconsin had issued on January 1, 1954, as surety, to St. Nicholas Buffalo Federal Credit Union, Credit Union Blanket Bond No. FCO-54458 CU. This surety bond was in effect during 1959, 1960, and 1961, the years involved here. The bond, Exhibit 4, is incorporated herein by this reference. Employers Mutual paid $39,570.35 to the St. Nicholas Federal Credit Union pursuant to the coverage, terms, and conditions of the above described surety bond, as reimbursement for the funds which Newell W. Emerson embezzled from the Credit Union. The action instituted in th Supreme Court of Erie County by the Employers Mutual Liability Insurance Company of Wisconsin against Newell W. Emerson, and the judgment entered on June 17, 1964, in favor of the Employers Mutual Insurance Company of Wisconsin, plaintiff, in the total sum of $45,119, were both based upon the terms, conditions, and coverage of the above described Credit Union Blanket Bond. Respondent has given notice to this Court pursuant to section 6861(c), 1954 Code, that jeopardy assessments were made against the petitioners on December 4, 1963, in *158 the amounts set forth below for the years 1959-1961, inclusive: Year
Income Tax
Penalty
Interest
1959
$1,278.45
$ 63.92
$ 278.66
1960
6,426.78
321.34
1,016.22
1961
2,249.91
112.50
220.77
$9,955.14
$497.76
$1,515.65
Ultimate Findings of Fact 1. The petitioner, Newel W. Emerson, embezzled funds in 1959, 1960, and 1961 in the respective amounts of $6,509.41, $22,599.16, and $10,383.33. 2. The amount of embezzled funds stated above constituted, respectively, additional taxable income in each year 1959, 1960, and 1961, of Newell W. Emerson. 3. Part of the underpayment of tax for each of the taxable years was due to negligence under section 6653(a), 1954 Code, and petitioner is liable for the addition to the tax for each year for negligence, as determined by the respondent. Opinion 1. One of the issues presented by the pleadings is whether the petitioner, Newell W. Emerson, "illegally obtained from the St. Nicholas Buffalo Credit Union" in each of the taxable years, as determined by the respondent, the amount added to the taxable income of Emerson for each year. In the petition, the petitioners denied illegally obtaining the funds in *159 question in each year. Under this issue, petitioners had the burden of proof. All of the facts were stipulated; no testimony was presented; Emerson did not personally appear and his appearance was only through his counsel. In the stipulations of facts (which are set forth as the Court's Findings of Fact), there appear the words "wrongful appropriation", "converted to his own use", "diverted to his personal use", and "to make restitution of all funds embezzled by the said Newell W. Emerson from the St. Nicholas Buffalo Federal Credit Union." From the stipulations of facts, it appears that petitioner now concedes that respondent's determination is correct, in the statutory deficiency notice, that he illegally obtained the funds in question, in each year, from the Credit Union, in the amount for each year determined by the respondent. However, in the event that there remains any question [3] under this issue, for failure of proof, the findings and conclusions are made that Emerson in each year embezzled funds from the Credit Union in the amount for each year determined by the respondent. 2. The second issue presented by the pleadings is *160 whether the total sum of money illegally obtained by Emerson in each year from the Credit Union was taxable income under section 61(a). Respondent relies upon James v. United States, 366 U.S. 213 (1961), as authority for his determination that such illegally obtained funds constituted taxable income in the taxable year in which the funds were illegally obtained, and he asserts that application of the rule of James, supra, is not limited to years ending after the date of the decision in James of the Supreme Court of the United States. At the trial of this case, petitioner's counsel stated that there is no controversy about the facts, and that during 1959, 1960, and 1961, the petitioner embezzled certain funds of the Credit Union. Petitioner's counsel stated, in effect, that it is petitioner's contention that embezzled funds do not constitute income within the meaning of the tax laws and the decision of the United States Supreme Court in James v. United States, supra. In substance, petitioner contends that the rule of James may not be and should not be applied retroactively in determining the civil liability for taxes, as distinguished from *161 criminal tax evasion; and that this case is distinguishable from James because of the facts here relating to the probation of petitioner, the plan for restitution by petitioner, the partial restitution made to date by the petitioner, and the civil judgments against and the payments by the surety. Petitioner contends that the embezzled funds in dispute were in effect "borrowed" funds and were not taxable income. Petitioner has not cited any case as authority in support of his contentions. James v. United States, supra, was decided on May 15, 1961. It appears that petitioner contends that the issue, as it pertains to 1959, 1960 and 1961, is controlled by the earlier decision in Commissioner v. Wilcox 327 U.S. 404 (1946), because petitioner is under the duty of repaying and making restitution of the funds involved. The reasoning in Wilcox was based upon the view that embezzled funds do not belong to the embezzler; therefore, such funds are not his taxable income. But in James, the Supreme Court has specifically overruled Wilcox. In Marvin E. Nerem, 41 T.C. 338 (1963), appeal dismissed, this Court held that the funds embezzled by the taxpayer *162 during the years 1959 and 1960 constituted taxable income in those years. We cited Fleming v. Fleming, 264 U.S. 29, 31, where the Supreme Court said: The effect of the subsequent decisions is not to make a new law but only to hold that the law always meant what the court now says it means. The court has power to construe a legislative act, but it has no power by change in construction to date its passage as a law from the time of the later decision. Petitioner recognizes, of course, that Commissioner v. Wilcox, supra, was expressly overruled in James v. United States, supra. The James case represents the Supreme Court's construction of a taxing statute to include embezzled funds in taxable income. This Court has stated in a similar case, 78Even though it was a change from its [the Supreme Court's] prior construction that held otherwise, the effective date of the inclusion [in gross income] was the date of the taxing statute and not the date of the decision [of the Supreme Court] interpreting it. Fleming v. Fleming, 264 U.S. 29; Marvin E. Nerem, 41 T.C. 338." [4]
*163 This Court does not have a choice as to whether we will follow either Wilcox or James. "It is as if Commissioner v. Wilcox had never been written. With Commissioner v. Wilcox, supra, overruled, we are left with the general principle announced in many cases that the fact that the gain is unlawful does not insulate it against inclusion in taxable income. Rutkin v. United States, 343 U.S. 130 (1952); L. M. Muldrow, 38 T.C. 907 (1962); Charles R. Leaf, 33 T.C. 1093 (1960), affd. per curiam 295 F. 2d 503 (C.A. 6, 1961); and Marvin E. Nerem, supra." [5]
This case is almost identical with Marvin E. Nerem, supra. There the petitioner-husband embezzled funds in 1959 and 1960. There, as here, he filed joint income tax returns with his wife, a joint petitioner, and they did not include the embezzled funds. The embezzler pleaded guilty to the crime and was sentenced and paroled. We held that even though the embezzlement occurred before Wilcox had been overruled by James v. United States, supra, the embezzled funds constituted income to petitioners under section 61(a) *164 of the 1954 Code for the respective years in which the embezzlements occurred. We reach the same conclusion here. The stipulated amounts that were embezzled by Emerson constituted unreported taxable income that should have been included in the joint returns for 1959, 1960, and 1961. Decision will be entered for the respondent. Footnotes
1. The stipulation of facts does not explain the computation of the net amount of $39,570.35, which was set forth in the insurance company's allegation of the amount it had paid to the Credit Union under the bond. The total amount embezzled by Emerson from the Credit Union in 1959, 1960, and 1961 was $41,581.77; and the net amount, after the Credit Union's recoveries as of January 1962 of $2,089.87, was $39,491.90.↩
2. The total amount of the funds of the Credit Union embezzled by Emerson in the 3 years 1959, 1960, and 1961, before any recoveries by the Credit Union as of January 1962, was $41,581.77. The net total amount thereof, after the recoveries of $2,089.87 by the Credit Union, was $39,491.90. The amount of the judgment in favor of the insurance company, $45,119, includes the total amount embezzled by Emerson; the stipulation of facts does not explain the computation of the total amount of the judgment.↩
3. A brief was not filed by petitioners.↩
4. William G. Hackney and Helen V. Hackney, Docket No. 5587-63, decided under a Memorandum Opinion filed May 12, 1965.↩
5. See footnote 4.↩