Francis T. Norman and Marguerite M. Norman v. Commissioner.
Norman v. Commissioner
Docket Nos. 1647-65, 6341-66.
United States Tax Court
T.C. Memo 1968-40; 1968 Tax Ct. Memo LEXIS 261; 27 T.C.M. (CCH) 181; T.C.M. (RIA) 68040; February 29, 1968. Filed Charles J. McDonough, Walbridge Bldg., Buffalo, N. Y., for petitioners. John W. Tissue, for respondent. ATKINS
Memorandum Opinion ATKINS, Judge: In Docket No. 1647-65 the respondent determined tax *262 deficiencies of $9,686.79, $17,137.57, $12,919.11, $10,059.11, and $18,163.65 against the petitioners for the taxable years 1958, 1959, 1960, 1961, and 1962, respectively, and additions to tax thereon under section 6653(a) of the Internal Revenue Code of 1954 in the respective amounts of $484.34, $856.88, $645.96, $502.96, and $908.18. In Docket No. 6341-66 he determined an income tax deficiency of $490.78 against the petitioners for the taxable year 1963 and an addition to tax thereon under section 6653(a) in the amount of $24.54. The issues presented are whether cash receipts illegally diverted by the petitioner Francis T. Norman from his employer constituted gross income in the years of the diversions; whether the petitioners realized capital gain in the taxable year 1962 as a result of their transfer of stock in that year in partial satisfaction of the employer's claim for restitution of the amounts wrongfully diverted; and whether the petitioners are liable for additions to the tax under section 6653(a) of the Code. All of the facts have been stipulated and the stipulations are incorporated herein by this reference. The petitioners, husband and wife, *263 filed joint Federal income tax returns on the cash method of accounting for the taxable years involved with the district director of internal revenue, Pittsburgh, Pennsylvania. On the date the petitions herein were filed the petitioners' residence was in Erie, Pennsylvania. Hereinafter Francis T. Norman will be referred to as the petitioner. From 1924 until October 1962, the petitioner was employed as the secretarytreasurer of the Firch Baking Company, Erie, Pennsylvania, a corporation, hereinafter referred to as Firch. His duties included the handling and verification of daily cash register receipts from a retail baked goods store owned and operated by Firch. During the taxable years 1958 through 1962 the petitioner diverted to his personal use and benefit the following amounts of daily cash receipts from the Firch retail store: 1958
$17,550.29
1959
29,721.92
1960
22,505.58
1961
18,260.25
1962
24,538.00 The above cash receipts were deposited in the petitioners' bank accounts and were expended by the petitioners for their own personal purposes and benefit. The foregoing amounts were not reported by the petitioners on their returns filed for the taxable years *264 1958 through 1962. Of the amount diverted in 1962, $2,713.85 remained in the petitioner's possession until 1963, when it was deposited in the petitioners' checking account. The petitioners did not report the $2,713.85 in their return filed for the taxable year 1963. The petitioner did not make or maintain at any time any records or memoranda concerning the amounts that he diverted from the cash receipts of the Firch retail store. The only records of such amounts are the bank records pertaining to deposits thereof in the petitioners' bank accounts. [1]
In order to conceal his diversions the petitioner directed the entry in Firch's books and records of cash receipts of the retail store in lesser amounts than the actual cash receipts of the store. His diversion of cash receipts from the store occurred without the consent or knowledge of any other employee or officer of Firch. No contemporaneous notes or agreements with respect thereto were executed. In October 1962, Firch discovered that petitioner had been diverting *265 cash receipts from the store. Consequently, petitioner's 183 services were terminated by resignation requested by Firch. In satisfaction of the claim of Firch against petitioner for his wrongful diversion of cash receipts, the petitioner in late October 1962 paid Firch $20,000 by check and transferred irrevocably 527 shares of Firch stock to the First National Bank of Erie, as trustee. The trustee was required to turn over 27 shares of the stock to Firch on October 29, 1962, 100 shares on January 2, 1963, and 100 shares on January 2 of each succeeding year until all of the stock was turned over to Firch, at which time the trust was to terminate. Under the trust agreement the petitioner gave up all his rights in the stock, except the right to receive all net income from the stock held in the trust during its existence. The trustee was authorized to sell any of the stock in the trust, provided written consent to such sale was given by Firch, in which case the proceeds of sale were to be paid immediately to Firch. On October 30, 1962, the petitioner and Firch, as a part of the same transaction, executed an agreement reciting that for consideration the parties released each other from *266 all claims of any nature arising out of the employment of petitioner by Firch. The petitioners' cost basis in the above stock was $100 per share and its fair market value at the time of transfer was $175 per share. The petitioners had held such stock more than 6 months. In determining the deficiencies the respondent increased the petitioners' reported taxable income for the taxable years 1958 through 1962 by adding thereto cash receipts diverted by the petitioner from the Firch retail store as follows: 1958
$ 17,550.29
1959
29,721.92
1960
22,505.58
1961
18,260.25
1962
21,824.15 In addition, the respondent determined that for the taxable year 1962 the petitioners realized long-term capital gain of $39,525 on the transfer of 527 shares of Firch stock in that year; and therefore increased reported taxable income by $19,762.50. The respondent also determined additions to tax for each of the taxable years 1958 through 1962 under section 6653 (a) of the Internal Revenue Code of 1954 on account of negligence or intentional disregard of rules and regulations. The respondent increased the petitioners' reported taxable income for the taxable *267 year 1963 by adding thereto cash receipts diverted by petitioner from Firch in the amount of $2,713.85. He also determined an addition to tax for that year under section 6653(a) of the Code. It has been stipulated that the $2,713.85 added to the petitioners' taxable income for the taxable year 1963 represents amounts diverted by petitioner from Firch during the petitioners' taxable year 1962. The respondent relies principally upon James v. United States, 366 U.S. 213, in support of his determination that the funds wrongfully diverted constituted taxable income to the petitioners in the years in question. In that case the Supreme Court overruled its prior decision in Commissioner v. Wilcox, 327 U. S. 404, and held that amounts embezzled by an employee from his employer constituted gross income to the employee, under section 61(a) of the Internal Revenue Code of 1954, in the year of embezzlement. The Court there stated in part: When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income *268 which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil v. Burnet, supra, at p. 424. In such case, the taxpayer has "actual command over the property taxed - the actual benefit for which the tax is paid," Corliss v. Bowers, supra. This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. * * * And it has been held that the principle of the James case is applicable to years prior to the decision in that case. Estate of Wallace P. Geiger, (C.A. 8) 352 F. 2d 221, affirming a Memorandum Opinion of this Court, certiorari denied 382 U.S. 1012; and Marvin E. Nerem, 41 T.C. 338. The petitioners contend that the principle of the James case is not applicable here. It is their contention that in view of the fact that in 1962 the petitioner made provision for satisfaction of Firch's claim against the petitioner for the diverted funds and the fact that petitioner and Firch entered into an agreement releasing each other from all 184 claims of any nature *269 arising out of petitioner's employment, it must be considered that there was a "consensual recognition, express or implied of an obligation to repay," and that the amounts diverted by the petitioner should be considered as amounts loaned or advanced. They state that the intention of the parties to treat the settlement as the repayment of loans or advances is unmistakably clear from the settlement documents. We cannot agree with the petitioners. At the time the funds were diverted there was no knowledge on the part of the employer of the diversions, and no contemporaneous notes or agreements were executed with respect to the diverted receipts. Indeed, the petitioner deliberately concealed the diversions by falsification of the employer's records. Under these circumstances there could not possibly have been any express or implied consent on the part of the employer to the diversions. The stipulation refers to funds as "wrongfully diverted," and the petitioners refer to them on brief as illegal diversions. We must conclude that the diversions did not constitute loans or advances. In the case of L. M. Muldrow, 38 T.C. 907, we rejected a contention similar to that raised *270 by the petitioners here, stating: During the taxable year petitioner sold for his own account 812 bales of embezzled cotton, for which he received likewise as his own $137,642.12. He deposited these funds in his personal bank account and had unrestricted use of them throughout the taxable year and, to the extent not previously lost or dissipated, during 1956 and 1957 and in 1958 at least until the time his defalcations were discovered. There is no showing of any recognition, consensual or otherwise, of an obligation to pay over any of the funds to the rightful owners of the cotton or of any holding of the funds for them until after his misdeeds caught up with him in 1958. And, under the James case, any such belated acknowledgment of liability may not be related back to the year of conversion, and that regardless of whether the taxpayer used an accrual or cash method of accounting in reporting his income. We accordingly hold that the diverted receipts are includable in the petitioners' gross income in the taxable years in which the diversions occurred. The parties have stipulated that the $2,713.85 which the respondent included in the petitioners' income for the taxable year 1963 *271 represented diversions made in the taxable year 1962. Although the petitioners, in their petition, questioned the respondent's determination that they were in receipt of long-term capital gain in the taxable year 1962 upon the disposition of the 527 shares of stock in satisfaction of the petitioner's liability for his diversions, this subject is not dealt with by them on brief. Suffice it to say that it is well established that the transfer of assets in satisfaction of an obligation is equivalent to a sale upon which gain or loss is recognized. See Harry L. Bialock, 35 T.C. 649, and cases cited therein. We accordingly approve the respondent's determination in this respect. On brief the respondent states that if we find that the payment of $20,000 to Firch and the transfer of the 527 shares of stock in trust for the benefit of Firch was a repayment of the amounts which had been embezzled in the taxable years 1958 through 1962 "then it appears that the petitioners may be entitled to a deduction in 1962 under section 165(a) of the Code, for the repayment of embezzled funds. See Rev. Rul. 65-254, C.B. 1965-2 50. [2] In the instant case we are unable to conclude *272 whether the diversions constituted embezzlement, or some other form of wrongful taking. There 185 is no showing whether the petitioner was charged with, or convicted of, embezzlement. However, for present purposes we think it would be immaterial whether there was technically an embezzlement, and we construe the respondent's statement as a concession that the petitioners are entitled to a deduction for 1962 if we sustain his contention that the diverted funds did not constitute amounts loaned, but constituted taxable income in the years in which diverted. Accordingly, in the recomputation under Rule 50 the petitioners will be allowed a deduction for the taxable year 1962 in the amount of $112,225, consisting of the amount of cash paid, $20,000, plus the fair market value of the stock transferred in trust, $92,225. *273 The respondent on brief has in effect conceded error in his determination of an addition to tax under section 6653(a) of the Code for the taxable year 1963. [3] The burden of proof is upon the petitioners to show that the respondent was in error in determining that they are liable for the additions to tax for the other years in issue. Byron H. Farwell, 35 T.C. 454, and cases cited therein. They have failed to meet such burden. The only reason advanced by them in support of their contention that the respondent erred in determining additions to tax under section 6653(a) is that the diverted funds constituted loans and not gross income to them. Since, as held above, the diversions constituted taxable income, we hold that they are liable for additions to tax under section 6653(a) of the Code to the extent provided in such section. *274 Decisions will be entered under Rule 50. Footnotes
1. It has been stipulated that the "amounts of cash receipts that were wrongfully diverted * * * were determined by the respondent under the bank deposits method."↩
2. Rev. Rul. 65-254 dealt with an employee who had embezzled funds from his employer in the years 1959 through 1961, and had repaid the amount embezzled when the embezzlement was discovered in 1962. It was there held that each of the several acts of embezzlement falls within the ambit of section 165(c)(2) of the Code, which provides for the deduction of "losses incurred in any transaction entered into for profit, though not connected with a trade or business." The Rev. Rul. accordingly held that a deduction is allowable under section 165(a) of the Code for the repayment of the embezzled funds for the taxable year in which the repayment is made. It is of interest to note that the respondent's concession here is consistent with the position taken by the Government in James v. United States, 366 U.S. 213, as evidenced by the following statement in the opinion in the James case: When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as "gross income" in the year received. United States v. Lewis, supra; Healy v. Commissioner, supra.↩ We do not believe that Congress intended to treat a law-breaking taxpayer differently. Just as the honest taxpayer may deduct any amount repaid in the year in which the repayment is made, the Government points out that, "if, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income."
3. Sec. 6653(a) of the Code provides in part as follows: (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes. - If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩