LOUISE M. SCUDDER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2736–62. Filed April 17, 1967.

*John S. Hager*, for the petitioner.
*Gerald W. Fuller*, for the respondent.

HOYT, *Judge:* Respondent determined deficiencies in income taxes and additions to the tax for fraud under section 6653(b)[1] against petitioner as follows:

| Year | Deficiency | Sec. 6653(b) addition |
|---|---|---|
| 1954 | $42, 718. 41 | $21, 359. 21 |
| 1955 | 52, 842. 54 | 26, 421. 27 |
| 1956 | 23, 868. 98 | 16, 631. 23 |
| 1957 | 20, 390. 83 | 10, 195. 42 |
| 1958 | 15, 679. 41 | 7, 839. 71 |

At trial we granted petitioner's motion to file an amendment to her reply to respondent's answer. The amendment admitted that Forms 1040 signed and filed by petitioner and her husband for the years 1954 through 1958 were false and fraudulent and that the unreported income of petitioner's husband for the years 1955 through 1958 was correctly determined by respondent. In view of the agreement of the parties and the concessions of petitioner, the only questions remaining for our determination are whether the joint returns filed by petitioner and her husband during the years in issue were legally effective and thus subjected her to joint and several liability, and, if so, whether petitioner's husband received unreported embezzlement income for the year 1954 in the amount of $71,025.28.

### FINDINGS OF FACT

The stipulated facts are found accordingly and adopted as our findings.

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

During the years in issue, Frank E. Scudder (hereinafter referred to as Frank), and Louise M. Scudder (hereinafter referred to as petitioner), were husband and wife residing in Owensboro, Ky. Forms 1040 were filed jointly during these years in the names of Frank and Louise Scudder with the district director of internal revenue, Louisville, Ky.

Petitioner was a partner with her five sisters in a wholesale liquor business (hereinafter referred to as the partnership), throughout the taxable years in question. Her income from this partnership was $7,799.65 in 1954, $10,222.51 in 1955, $8,218.01 in 1956, $10,466.68 in 1957, and $7,419.15 in 1958. During those years Frank was employed by the partnership as manager. He received wages and a bonus totaling $8,980.74 in 1954, $10,501.25 in 1955, $8,790.53 in 1956, $10,512.59 in 1957, and $8,214.92 in 1958.

Frank exercised complete control over the affairs of the partnership until the latter part of 1958. He determined his own rate of compensation, supervised recordkeeping, determined the amount of cash distributions to the partners, handled employee problems, and signed the partnership information tax returns pursuant to a power of attorney from the partners.

Substantial amounts of partnership funds were taken and used by Frank for his individual purposes in each of the years 1954 through 1958. The money was taken without the knowledge or consent of the partners, and the parties agree that the misappropriations constituted embezzlements. Frank concealed his embezzlement activities from petitioner and the accountants who prepared joint income tax returns for the years 1954 through 1958. Repayments of part of the amounts taken occurred periodically prior to the discovery of Frank's defalcations. The parties are in agreement that the net amounts taken in each year, except 1954, were as follows:

| | |
|---|---|
| 1954 | $71,025.28 |
| 1955 | 83,768.70 |
| 1956 | 56,293.97 |
| 1957 | 33,514.65 |
| 1958 | 37,063.24 |

Petitioner contends that the net amount taken in 1954 should be only $63,685.79 in lieu of $71,025.28 as determined by respondent.

The embezzlements were concealed by disguising them as loans on partnership information which was furnished to the accountants for preparation of annual financial statements and information returns. Copies of the financial statements were available to the partners, but Frank avoided distributing them by telling one of the partners that the preparation of each copy would cost the partnership $12.50. The embezzlements were discovered in the fall of 1958 when it was learned

that the partners had not received copies of the financial statements and an investigation was then made.

Following his admission of the embezzlements, Frank transferred to the partnership in partial restitution assets valued at $135,470.45. This transfer of assets was made by a document dated November 17, 1958.

Petitioner was not informed of her husband's conduct until May or June of 1959. It was feared that an immediate disclosure would jeopardize petitioner's health since she had been suffering from illnesses and emotional disturbances. Petitioner's nervous condition had required hospitalization and extensive medical treatment in 1955.

It was considered to be in the best interest of the partnership to retain Frank as a figurehead manager for a period following the discovery of the embezzlements. Frank's position with the partnership was terminated in May or June of 1959 about the time that petitioner was advised by her relatives of Frank's defalcations; it was decided then that it would be beneficial to her children to move the family to Hopkinsville, Ky. The move to Hopkinsville was accomplished and petitioner obtained employment. Petitioner and her husband were separated in 1962 and a divorce was granted in 1963.

It is not contended by respondent that petitioner personally benefited, directly or indirectly, from the funds taken by Frank from the partnership. The partnership sustained a loss due to the embezzlements in the amount of $140,817.95. Petitioner's distributive share of the loss was $21,082.75, of which $6,596.16 was taken as a deduction on her 1959 return. The remaining balance of $14,486.59 was allowed as a net operating loss carryback for the taxable year 1956.

The joint income tax returns filed by Frank and petitioner for the years 1954 through 1958 were prepared from information furnished entirely by Frank. Petitioner never questioned her husband concerning the information on the returns and did not discuss financial matters with him. Petitioner had complete trust and confidence in her husband during this period, and he was well respected in the community. Their marriage was normally happy throughout these years. The question of whether joint income tax returns should be filed was discussed once in 1949. At that time Frank told petitioner that it would be to their advantage to file joint returns. Petitioner continued to sign joint returns without question until she was informed of her husband's embezzlement activities. Subsequent to this time, petitioner filed separate income tax returns even though she was eligible to file joint returns until 1962.

Although most of the tax deficiencies are based on the unreported embezzlement income, Frank also received income from several other sources during the years in question which he failed to report. He

received a share of the profits from a number of local business enterprises in which he was secretly interested. He also failed to report a travel and expense allowance from the partnership which he received each year but did not use for business travel and expenses.

A consent, Form 872, was signed by Frank and petitioner for the taxable year 1957. This action extended the normal limitation period for assessment of 1957 taxes to June 30, 1962. The notice of deficiency was mailed to petitioner on April 13, 1962.

OPINION

Petitioner's liability for the assessed income taxes and fraud penalties is based upon section 6013(d)(3)[2] which provides for joint and several liability for the tax on the aggregate income where a husband and wife elect to file a joint return. The joint and several liability also applies to fraud penalties despite the innocence of the wife or the husband. *W. L. Kann*, 18 T.C. 1032 (1952), affd. 210 F. 2d 247 (C.A. 3, 1953), certiorari denied 347 U.S. 967 (1954); *Myrna S. Howell*, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949).

Petitioner seeks to avoid liability for the deficiencies on the ground that legally effective joint returns were not filed with Frank for the years 1954 through 1958. Petitioner concedes that she voluntarily signed returns for the years in question with her husband and that valid joint returns were filed in form. It is argued, however, that joint returns were not filed in substance due to Frank's fraudulent concealment of his embezzlement and other business activities from petitioner. The questions presented for our decision, therefore, are whether petitioner was tricked and defrauded by her husband into signing joint returns, and, if so, whether this vitiates the effectiveness of her signature for purposes of joint and several liability on the return.

We have found no case in which the foregoing argument has been exclusively relied upon. There are cases, however, in which wives have attempted to avoid statutory liability on joint returns on the ground that their signatures on the returns were the consequence of duress exerted by their husbands. See *Hazel Stanley*, 45 T.C. 555 (1966); *Irving S. Federbush*, 34 T.C. 740, 754–758 (1960), affirmed per curiam 325 F. 2d 1 (C.A. 2, 1963); *Estate of Merlin H. Aylesworth*, 24 T.C. 134 (1955). These cases have interpreted the term "joint return" used in section 6013(d)(3) as not including a return which the wife has been forced to sign because of duress. The legal premise on which this

---

[2] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.
  (d) DEFINITIONS. * * *

  *       *       *       *       *       *       *

  (3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

interpretation is based is that legal consequences will not attach to an involuntary act.

It is beyond controversy in the instant case that petitioner signed the returns voluntarily; thus petitioner deprived herself of any basis on which to contend that duress was responsible for her signature. See *Hazel Stanley, supra.* However, it is petitioner's position that if the concept of duress as used in the law of contracts can relieve a taxpayer from liability on a joint return, the concept of fraud as used in the law of contracts should be capable of having the same effect.

We have previously held that the inquiry as to whether or not a Federal income tax return is a "joint return" should be conducted under a uniform set of standards. *Hazel Stanley, supra.* Although we agree that fraud may void a person's signature for purposes of liability on a purported joint return, it seems only logical that the signature must be a product of the fraud. Petitioner has failed to surmount this initial hurdle. Frank was certainly violating the trust and confidence of petitioner by embezzling funds from the partnership of which she was a member, but we cannot relate this breach of duty to the filing of joint returns. It was clearly advantageous for petitioner and Frank to file joint returns during the years in question since their individual incomes and deductions attributable thereto were never equal. Looking at petitioner and Frank and their children as a family unit, a tax saving was obtained by filing joint returns.

It is doubtful whether Frank viewed his unauthorized loans from the partnership as creating taxable income and indeed the Supreme Court did not have such a view of embezzlements throughout the years in question. See *Commissioner* v. *Wilcox,* 327 U.S. 404 (1946). However, it is well settled that the change in the Supreme Court's position expressed in *James* v. *United States,* 366 U.S. 213 (1961), is afforded retroactive effectiveness. See *Geiger's Estate* v. *Commissioner,* 352 F. 2d 221 (C.A. 8, 1965), affirming a Memorandum Opinion of this Court, certiorari denied 382 U.S. 1012 (1966) ; *Marvin E. Nerem,* 41 T.C. 338 (1963). It must be held in this case, therefore, that embezzled funds received during 1954 through 1958 constitute taxable income.

With respect to the other income which Frank failed to report, it would be an exceedingly strained interpretation of the law of fraud for us to hold that he had a duty to disclose this omission to his wife and that failure to do so would constitute fraud sufficient to invalidate the wife's signature. The record before us is devoid of evidence of deliberate deception practiced by Frank to induce petitioner to sign joint returns with him. There is no showing of detrimental reliance on the part of the wife now being held jointly and severally liable on the joint returns.

We think that petitioner has failed to show that her signatures on the joint returns were the product of her husband's fraud. Thus, we are constrained to hold that petitioner must be subjected to joint and several liability under section 6013(d)(3) on the ground that she filed legally effective joint returns during the years in issue. Although we have much sympathy for petitioner's unhappy situation and are appalled at the harshness of this result in the instant case, the inflexible statute leaves no room for amelioration. It would seem that only remedial legislation can soften the impact of the rule of strict individual liability for income taxes on the many married women who are unknowingly subjected to its provisions by filing joint returns.

This case is an extreme one to be sure, but it illustrates the degree of risk assumed by filing joint returns. It seems extremely harsh that petitioner should be liable for a tax based on money embezzled from the partnership which she and her sisters owned. However, under the terms of the statute, petitioner stands in the shoes of her husband and therefore is individually responsible for any tax deficiency legally applicable to the husband. No other interpretation of the statute is rationally permissible if the phrase "liability with respect to the tax shall be joint and several" is to be given its usual and long-accepted meaning in the law.

As to the subsidiary issue with respect to the amount of embezzled income to be included for 1954, the record is extremely vague and confusing and the petitioner's briefs are of little help to clarify the matter. Apparently it is petitioner's view that some repayments made in 1954 of 1953 extractions should be used to reduce the net amount of embezzled income in 1954. The respondent determined that Frank received $71,025.28 but petitioner contends it was only $63,685.79. The evidence before us utterly fails to establish the correct and precise amount Frank took in 1954. The presumption of correctness attaching to respondent's determination has not been overcome.

We therefore, with considerable reluctance, uphold respondent's determination of deficiencies and additions to tax in their entirety.

*Decision will be entered for the respondent.*