Louise M. SCUDDER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 18041.

United States Court of Appeals
Sixth Circuit.

Dec. 30, 1968.

Rehearing Denied May 8, 1969.

John S. Hager, Owensboro, Ky., for petitioner, John S. Hager, Morton J. Holbrook, Sandidge, Holbrook, Craig & Hager, Owensboro, Ky., on brief.

Robert J. Campbell, Dept. of Justice, Washington, D. C., for respondent, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Robert J. Campbell, Attys., Dept. of Justice, Washington, D. C., on brief.

Before O'SULLIVAN and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

This case presents the petition of Louise M. Scudder for review of a decision of the Tax Court—Louise M. Scudder, 48 T.C. 36 (1967)—whereby she was held liable for $155,500.17 in income tax deficiencies and $82,446.84 in fraud pen-

alties thereon. This judgment was entered upon the claim that Louise's husband had fraudulently omitted from their joint tax returns for the years 1954–1958 the sum of $281,665.84 (and some smaller sums) which he had allegedly embezzled from her and her five sisters—partners, owning the Owensboro Liquor Company of Owensboro, Kentucky. The husband, Frank Scudder, was the manager of the partnership during the time involved, apparently without any definition of or limitation upon his authority as such.[1] His unauthorized withdrawals from the partnership were as follows:

| Year | Amount |
|------|--------|
| 1954 | $ 71,025.28 |
| 1955 | 83,768.70 |
| 1956 | 56,293.97 |
| 1957 | 33,514.65 |
| 1958 | 37,063.24 |
| | $281,665.84 |

Other items of income not reported in the joint returns were monies received by the husband from enterprises in which he had an interest, in the amount of $8,188.92, and withdrawals from the partnership of fictitious travel expenses in the amount of $22,100.

On April 13, 1962, the Commissioner issued a notice of deficiency against petitioner and her husband in the following amounts:

| Year | Deficiency | Fraud Penalty |
|------|-----------|---------------|
| 1954 | $42,718.41 | $21,359.21 |
| 1955 | 52,842.54 | 26,421.27 |
| 1956 | 23,868.98 | 16,631.23 |
| 1957 | 20,390.83 | 10,195.42 |
| 1958 | 15,679.41 | 7,839.71 |
| | | Total $237,946.23 |

Frank Scudder did not seek a redetermination of the Commissioner's assessments and is not an appellant. During the years in question a firm of accountants prepared the annual financial statements of the partnership, listing Frank's involved withdrawals as loans to him. These withdrawals had been so entered upon the partnership books. The accountants made copies of these financial statements for delivery to the sister-partners but left it to Frank to make such delivery. He did not do so, and brushed off one sister's request for a copy by telling her that extra copies cost $12.50 each. The same accountants prepared the partnership information returns, correctly reporting the partnership earnings from which Frank's withdrawals had been made. Louise's share of the partnership earnings was accurately shown as taxable income on the joint returns for the years involved. It may be assumed also that Louise's sisters correctly reported and paid income taxes upon their respective shares of the partnership earnings. Thus, except for Frank's taking of fictitious travel expenses and the lower brackets in which the individual partner's share of the earnings would be reported, it would appear that income taxes due were paid upon the monies embezzled or withdrawn by Frank.

In the fall of 1958, Frank's defalcations were discovered. Louise's brother, with the accountants' help, sought to make some repair without letting Louise know of the situation—her delicate health suggested keeping it from her. Frank gave a demand note to the partnership for the amount then calculated to be the total amount of his withdrawals, $268,733, payable on demand with interest at 5%. The note was secured by a mortgage and pledges of various items of real and personal property, which, except for the home of Louise and Frank, were described as being all of Frank's "assets of whatsoever nature, real, personal and mixed." These assets were

1. Frank exercised complete control over the affairs of the partnership until the latter part of 1958. He determined his own rate of compensation, supervised recordkeeping, determined the amount of cash distributions to the partners, handled employee problems, and signed the partnership information tax returns pursuant to a power of attorney from the partners." 48 T.C. at 37.

forthwith transferred to the partnership, the Owensboro Liquor Company, at an agreed value of $135,470.45, and applied to Frank Scudder's debt to the partnership. While the record is silent on the subject, it may be inferred that Frank Scudder is not now at least, a source from which either his debt to the partnership can be collected or the government's tax claim can be settled. The record, in fact, does not reveal the present whereabouts of Frank.[2] Thus an affirmance of the Tax Court would visit upon the innocent petitioner payment of $237,946 for taxes and fraud penalties, computed substantially upon money alleged to have been embezzled or taken without authority from her sisters and herself by her husband. This is so even though Frank's repayments have reduced his defalcations to approximately $146,000, an amount about $91,000 less than the tax bill which the Commissioner considered that he was required to extract wholly from one of the victims of the wrong.[3] Of this, the Tax Court's opinion says:

"Although we have much sympathy for petitioner's unhappy situation *and are appalled at the harshness of this result* in the instant case, the inflexible stat-

ute leaves no room for amelioration." (Emphasis supplied.) 48 T.C. at 41.

and concluded that:

"We therefore, *with considerable reluctance,* uphold respondent's determination of deficiencies and additions to tax in their entirety." (Emphasis supplied.) 48 T.C. at 41.

We consider that the Tax Court was overly modest in measuring its own prerogatives and powers when it concluded that "the inflexible statute leaves no room for amelioration."

The bizarre facts before us make this case one of first impression. The Tax Court and the Commissioner apparently felt that the Internal Revenue Code, 26 U.S.C. § 6013(d)(3)[4], required the action taken, notwithstanding the Tax Court's "considerable reluctance."

Answering appellant's position that the law should not tolerate the burdens visited upon her by the Commissioner, the government's brief says:

"The courts have consistently rejected this position for the same reason which governed the Tax Court decision below—such liability is clearly and unmistakably provided in the Internal Revenue Code and can be set aside only by Congress. See Howell v. Com-

2. The evidence discloses that the marriage of Frank and Louise Scudder was apparently a happy one during the time of his misdeeds. It ended in divorce after the collapse of his discussed enterprises. Louise made an effort to save the marriage by moving away from Owensboro with Frank so that a new start could be made. This effort failed. The Scudders had four children and the Tax Court's opinion and the evidence show that Louise had been in frail health, requiring substantial periods of hospitalization for a nervous disorder. She entrusted to her husband the complete control and management of their joint, and her individual, financial matters, signing without question whatever her husband presented to her.

3. As to the effect of Frank's repayment of $135,470.45, the government's brief says:
"We do note, however, that in the computation of the deficiency below

the taxpayer, as a co-maker of the joint return for 1958, was erroneously not allowed a loss deduction for Frank's partial restitution of $135,470.45 to the partnership on November 17, 1958. See Rev.Rul. 65–254, 1965–2 Cum.Bull. 50. Accordingly, in the event we prevail in this Court, we suggest a remand to the Tax Court for a recomputation of the taxpayer's deficiency taking into account the stated loss deduction."
There is no explanation as to why neither the Commissioner nor the Tax Court took account of this repayment. Neither do we understand the suggestion that it be considered only as a "loss deduction."

4. 26 U.S.C. § 6013(d)(3):
"If a joint return (of husband and wife) is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."

missioner, 175 F.2d 240 (C.A. 6th 1949); Moore v. United States, 360 F.2d 353 (C.A. 4th 1965); Ginsberg's Estate v. Commissioner, 271 F.2d 511 (C.A. 5th 1959); Furnish v. Commissioner, 262 F.2d 727 (C.A. 9th 1958); Prokop v. Commissioner, 254 F.2d 544 (C.A. 7th 1958); Kann v. Commissioner, 210 F.2d 247 (C.A. 3d 1953), certiorari denied, 347 U.S. 967 [74 S.Ct. 778, 98 L.Ed. 1109] (1954)."

and concludes that the taxpayer can cite no contrary authorities. We agree that the appellant did not, nor are we able to point to any authority which, on the facts of the cases cited above, announced a contrary rule. But we disagree with the government's further position that appellant does not "allege any circumstances *not found* in the above cases." We are aware that among the cases set out above can be found decisions holding that under 26 U.S.C. § 6013(a) (3), a wife's joint and several liability arising from a fraudulent joint return remains, including liability for fraud penalties, even though she had no knowledge of the fraud. The broad rule was succinctly stated by this Court in Howell v. Com'r, 175 F.2d 240 (6th Cir. 1949), where at page 241 we said:

"The fact that petitioner was not the moving spirit in the fraud is immaterial on the question of her liability."

But none of the cases relied on by the Tax Court contains the factual situation here; none holds that an innocent wife can be held liable for income taxes on monies allegedly embezzled from her by her husband. And none involves a situation where allegedly embezzled funds were shown as loans to the alleged embezzler on the books of the concern from which the withdrawals were made, and upon discovery the alleged embezzler formally recognized his indebtedness for the monies taken by giving his note for the sum taken, and forthwith repaid substantially half of the total debt by transferring to his creditors assets in

the amount of $135,470.45; and all of this is accomplished before the Commissioner takes any cognizance of the matter.

The Tax Court appears to recognize that there can be situations where an innocent wife will escape the kind of injustice that the Commissioner appears to be inflicting. It cites Furnish v. Com'r, 262 F.2d 727 (9th Cir. 1958), which holds that if the joint and fraudulent return was signed by the wife only because such signing was the product of duress practiced upon her by her husband, she will not be liable for deficiencies and penalties assessed because of the fraudulent conduct of her husband. In that case, the wife claimed that she merely signed a blank form of return at the insistence of her domineering husband. In remanding the case to the Tax Court for a finding as to whether duress had in fact been practiced on the wife, the Ninth Circuit said:

" 'Duress' may exist not only when a gun is held to one's head while a signature is being subscribed to a document. * * * The actions of the husband in this particular case over a long period of time with all the other facts before the Court, lead us to the conclusion that here there could well have existed duress on the wife sufficient to destroy her free will." 262 F.2d at 733.

We should mention the case of Nadine I. Davenport, 48 T.C. 921 (1967), which purports to follow the Tax Court holding in the case at bar, saying:

"The facts in the instant case are indistinguishable from those in Louise M. Scudder, 48 T.C. 36 (1967) * *." and concludes that:

"Here, as in Louise M. Scudder, supra, the evidence does not show that the wife's signature was obtained by duress * * * or was obtained *by trickery, nor does the evidence show any deliberate deception by the hus-*

*band to induce his wife to sign a joint return with him.*" (Emphasis supplied.) 48 T.C. at 927.

While it may indeed be dictum, the emphasized portion of this quote suggests that "trickery" or "deliberate deception," employed by a husband to obtain his wife's signature to a tax return, will exonerate the victimized wife from the punishment and penalties of the Revenue Code. In its opinion in the case at bar, the Tax Court said:

> "Although we agree that fraud may void a person's signature for purposes of liability on a purported joint return, it seems only logical that the signature must be a product of the fraud. Petitioner has failed to surmount this initial hurdle. Frank was certainly violating the trust and confidence of petitioner by embezzling funds from the partnership of which she was a member, but we cannot relate this breach of duty to the filing of joint returns." 48 T.C at 40.

The Court, however, indicated that there was no trickery or fraud practiced upon Louise by her husband. The holding of the Tax Court, and other courts, that duress, trickery and fraud practiced upon a wife will, in certain factual contexts, prevent her being subjected to liability of the kind here involved, derives not from language of relevant tax statutes but from the general rules of law and equity. We just cannot persuade ourselves that the executions of the joint returns here were not the product of conduct equivalent in wrong to the fraud, trickery and, indeed, the duress which the Tax Court appears to concede will insulate its victim from liabilities which would otherwise accrue. Running through the cases relied upon by the United States here is also the indication that there the wife had enjoyed the use of the embezzled funds through some spending of them for her benefit. But here the Tax Court found:

> "It is not contended by respondent that petitioner personally benefited, direct-

ly or indirectly, from the funds taken by Frank from the partnership."

The Tax Court's opinion contains the observation:

> "It is doubtful whether Frank viewed his unauthorized loans from the partnership as creating taxable income and indeed the Supreme Court did not have such a view of embezzlements throughout the years in question." 48 T.C. at 40.

We do not believe that the case at bar can be adequately discussed or properly decided without consideration of Com'r v. Wilcox, 327 U.S. 404, 66 S.Ct 546, 90 L.Ed. 752 (1946), which held that embezzled monies did not constitute taxable income to the embezzler and of James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) which overruled *Wilcox*, but reversed a conviction of a taxpayer for willful failure to report embezzled funds as income for the years 1951 through 1954, because "the statute contained the gloss placed upon it by *Wilcox* at the time the alleged crime was committed." 366 U.S. at 221–222, 81 S.Ct. at 1057.

Both of these cases were decided by divided courts and in *James* there were five separate opinions. Between the two decisions came Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed 833 (1954) which without a majority of the Court expressly overruling *Wilcox*, held that money obtained by extortion was taxable income to the extortionist. In *Wilcox* the majority of the Court reasoned that embezzled funds did not belong as a matter of right to the embezzler who immediately became indebted to the one from whom he had embezzled for the monies taken. The Court further indicated that the government was incorrect to take its tax preferentially to the defrauded party:

> "Sanctioning a tax under the circumstances before us would serve only to

give the United States an unjustified preference as to part of the money which rightfully and completely belongs to the taxpayer's employer." 327 U.S. at 410, 66 S.Ct. at 550.

Respectfully we ponder what the United States·Supreme Court would do with the special facts of this case. Although the parties to this action stipulated that Frank's withdrawal of funds constituted "embezzlement," we believe that this issue should not be so summarily dismissed. Frank's withdrawals were shown on the books of the partnership as loans and Frank repaid a portion of them from time to time. When these "unauthorized loans" or "embezzlements" were discovered, Frank executed a partially secured note to the partnership for the agreed upon amount of his withdrawals. The partnership accepted the security in partial payment of the note. Frank remains liable on the balance. There is no evidence that he has been prosecuted for embezzlement or a related crime. It thus appears that the partners, as well as Frank, have, by their conduct, chosen to treat Frank's dealings as unauthorized loans. They were likewise characterized by the Tax Court. If these transactions are so labeled, they do not constitute taxable income to Frank and Louise. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), while holding that embezzled money is taxable income of the embezzler in the year of embezzlement, specifically excludes loans and situations where there has been recognized an implied obligation to repay:

"When a taxpayer acquires earnings, lawfully or unlawfully, *without the consensual recognition, express or implied, of an obligation to repay* and without restriction of their disposition, 'he has received income which he is required to return, even though it may

still be claimed that he is not entitled *to retain the money, and even though* he may still be adjudged liable to restore its equivalent.' North American Oil Consolidated v. Burnet, supra, 286 U.S. at page 424, 52 S.Ct. at p. 615. * * * This standard brings wrongful appropriations within the broad sweep of 'gross income'; *it excludes loans.*" 366 U.S. at 219, 81 S.Ct. at 1055. (Emphasis supplied.)

The precise factual situation in dispute here was considered in neither *Wilcox* nor *James* as, in both those cases, the person who withdrew the funds without authorization was convicted of embezzlement or a related crime.

Under the special facts of this case, we do not consider that a holding by us that the monies withdrawn by Frank Scudder were not taxable income for which his victimized wife must now pay, would run counter to James v. United States, supra. We believe, of course, that monies received by Scudder from enterprises in which he may have invested some of the allegedly embezzled funds were taxable ,income which should have been included in the joint returns.

 It is impossible for us to make a definitive resolution of the arithmetic involved until we know how the Commissioner will treat and apply the $135,-470.45 paid back to the partnership by Frank Scudder. For his advice in reassessing the tax, we hold:

1) That no judgment or assessment of deficiencies or penalties which are based either directly or indirectly on Frank Scudder's withdrawals from the partnership, Owensboro Liquor Company, shall be imposed on Louise Scudder [5].

2) That in computing the taxes and penalties due on account of unreported income realized from outside sources,

---

5. We are aware that Frank's annual withdrawals of amounts falsely labeled travel expense caused inaccuracies in the annual partnership returns. This can be considered upon reassessment.

it shall be determined how much loss deduction may be used by the taxpayer Louise Scudder from the failure of the partnership to recoup the total amount of the withdrawals.

3) That in computing any liability of taxpayer Louise Scudder, proper application shall be made of the said sum of $135,470.45 repaid by the husband, Frank Scudder.

To the extent that our holding may be factually inconsistent with the Tax Court's findings of fact, we hold, obedient to Com'r v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), that its findings are clearly erroneous.

The case is remanded for further consideration consistent with this opinion.