# United States Tax Court

158 T.C. No. 7

MICHELLE DELPONTE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket Nos.  1144-05,  1334-06,  Filed May 5, 2022.
20679-09, 20680-09,
20681-09.

————————

P raised innocent-spouse relief as an affirmative defense in a deficiency proceeding. Following IRS procedure, R's counsel referred the request to its Cincinnati Centralized Innocent Spouse Operation (CCISO). CCISO concluded that P was entitled to relief under I.R.C. § 6015(c). CCISO communicated this to R's counsel, who asked P for more information to make a final determination. P instead moved for entry of decision granting her relief.

*Held*: Where innocent-spouse relief is raised as an affirmative defense for the first time in a petition that invokes our deficiency jurisdiction, R's counsel has final authority to concede or settle the issue with P.

*Held*, *further*, P's motion for entry of decision will be denied.

————————

*Alvah Lavar Taylor, Jonathan T. Amitrano*, and *Lisa O. Nelson*, for petitioner.

*Benjamin R. Poor* and *Paul Colleran*, for respondent.

OPINION

HOLMES, *Judge*: Michelle DelPonte separated from her ex-husband, William Goddard, in 2000. She is still, more than twenty years later, trying to untangle his affairs from her own. What concerns us is her effort to be relieved of her liability on the joint tax returns she filed with Goddard while they were married. The part of the IRS bureaucracy that usually handles these sorts of requests thinks she's entitled to relief. The IRS's lawyer disagrees. We must decide who speaks for the IRS.

*Background*

During his marriage to DelPonte,[1] Goddard was a lawyer who sold exceptionally aggressive tax-avoidance strategies with his business partner David Greenberg and became very wealthy in the process. He tried to shelter his income from selling shelters by using the same shelter strategy he sold, but the IRS soon caught on and issued notices of deficiency for tax years 1999, 2000, and 2001. Most of the facts surrounding Goddard's and Greenberg's schemes—and the audit that led to their notices of deficiency—are irrelevant to these cases. We have already described them in detail in *Greenberg v. Commissioner*, 115 T.C.M. (CCH) 1403 (2018), *aff'd,* 10 F.4th 1136 (11th Cir. 2021), *and aff'd sub nom. Goddard v. Commissioner*, No. 20-73023, 2021 WL 5985581 (9th Cir. Dec. 17, 2021).

What is relevant, though, is the fact that Goddard filed joint returns with DelPonte for each of those three years. That means she is jointly and severally liable with Goddard for the several millions of

---

[1] DelPonte's name during the marriage was "Michelle Goddard," and her petitions were filed under that name. She has since remarried and legally changed her name to "Michelle DelPonte," and we have amended the captions in these cases to reflect that change.

dollars in tax that we found were owed to the IRS. *See* § 6013(d)(3).[2] So when the first notice of deficiency arrived in late 2004, it was addressed to "William A. and Michelle Goddard." But DelPonte was kept in the dark about this notice. It had been sent to Goddard's law firm, and Goddard—who had by that time been living apart from DelPonte for a few years—never told her. He instead filed a petition on her behalf asserting that she was an "innocent spouse" under section 6015, apparently recognizing that he was solely responsible for the profits he had accumulated over the years and that it was only fair that he should be solely responsible for any large tax bill that might result.

The IRS sent another notice of deficiency to Goddard's law firm in 2005 and three more in 2009. In response to each notice, Goddard filed a petition in which he asserted innocent-spouse relief on DelPonte's behalf without telling her. It wasn't until November 2010 that DelPonte first became aware of the deficiencies asserted against her and the ongoing litigation before us.[3] She promptly hired her own lawyer and ratified the petitions Goddard had filed.

In April 2011 the Office of Chief Counsel referred DelPonte's claim for innocent-spouse relief to the IRS's Cincinnati Centralized Innocent Spouse Operation (CCISO) "to make a determination regarding [DelPonte's] entitlement to such relief." CCISO is the IRS unit that receives and processes most requests for innocent-spouse relief. Internal Revenue Manual (IRM) 25.15.3.3 (Dec. 12, 2016).[4] Its determination letters are generally binding on the Commissioner and the spouse asking for relief, *see* IRM 25.15.18.1.1(2) (Mar. 20, 2019), but the referral letter that accompanied DelPonte's request asked CCISO to not issue a determination letter but instead "provide the results of [its] consideration directly to [the Office of Chief Counsel]." Having received the referral, CCISO reached out to DelPonte directly and instructed her to fill out and return a Form 8857, Request for Innocent Spouse Relief.

---

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] We had in May 2010 already ordered that the litigation should be bifurcated so that we could first decide the amounts of the liabilities owed and then address the issue of whether DelPonte qualified for innocent-spouse relief.

[4] The IRM doesn't have the force of law or confer substantive rights on taxpayers. It does, however, govern the internal affairs and administration of the IRS, and reliably describes the functions delegated to the different offices within the IRS. *United States v. McKee*, 192 F.3d 535, 540 (6th Cir. 1999).

DelPonte did just that, and after reviewing her paperwork, CCISO concluded in December 2011 that she should be granted relief for each of the years at issue.

CCISO did what the Chief Counsel lawyer had asked. It did not send a determination letter to DelPonte, but instead sent a letter explaining its conclusion directly to the Office of Chief Counsel. And here's where an already unusual case got even more unusualer. Rather than accepting CCISO's conclusion and settling DelPonte's cases, the Office of Chief Counsel "decided that more information was needed . . . to allow [DelPonte] relief under I.R.C. [section] 6015." So in August 2012 the Office of Chief Counsel invited DelPonte to participate in a *Branerton*[5] conference to exchange documents and information "[i]n order for [CCISO] to properly evaluate [her] claim for relief." It also informed her that CCISO had already "rendered its decision in [her favor], but that [the Office of Chief Counsel] had overridden that decision." DelPonte declined the invitation; she argued that additional information would be superfluous because CCISO had already decided she was entitled to relief and that its decision was binding on Chief Counsel.

Aside from some back-and-forth letters between DelPonte and Chief Counsel in which they argued the point, that's where things stood for many years. In the meantime the consolidated deficiency cases begun by Goddard and Greenberg progressed through discovery, trial, and briefing. We released our opinion in those cases in May 2018, and in it we upheld the Commissioner's determinations of deficiencies in all respects except where he failed to meet the supervisory-approval requirement of section 6751(b). *Greenberg*, 115 T.C.M. (CCH) at 1418. We ordered the parties to compute the correct amounts of tax owed under Rule 155, but in cases as complex as these, that task isn't as simple as plugging numbers into a calculator and getting a total—the parties spent more than a year to precisely calculate the deficiencies. We severed the five cases in which DelPonte was a petitioner in January 2020, and entered decisions in the remaining ten the following April. Goddard and Greenberg then appealed their cases to the Eleventh Circuit in August 2020. Goddard's cases were severed from Greenberg's

---

[5] *Branerton Corp. v. Commissioner*, 61 T.C. 691 (1974) (describing Tax Court's informal discovery procedure).

and transferred to the Ninth Circuit the following October.[6] The Eleventh Circuit affirmed our holdings in Greenberg's cases, *Greenberg*, 10 F.4th 1136, in August 2021 and the Ninth Circuit did likewise in December, *Goddard*, 2021 WL 5985581. So nearly fifteen years after the lowest numbered cases in that group had first been calendared for trial, they are now final and unappealable.

DelPonte and Chief Counsel resumed their correspondence on the innocent-spouse issue shortly after we released our opinion in the deficiency cases. DelPonte hired a new team of lawyers and responded to the Chief Counsel's discovery requests, but still insisted that discovery was unnecessary because CCISO had already granted her relief. Chief Counsel stood firm in its position that CCISO didn't speak for the IRS in her cases. DelPonte then moved for entry of decisions in her favor because, in her view, Chief Counsel is wrong.

We usually get motions for entry of decision when a party wants to renege on a settlement or when parties disagree about computations under Rule 155. In these cases, however, there is no stipulation or computation to fight about. This motion is really more like one for partial summary judgment on the issue of whether DelPonte is entitled to relief under section 6015(c) because the CCISO determined that she is.

And that is how we will treat it.

*Discussion*

This is a novel argument, and to analyze it we will begin with an account of the evolution of the different species of innocent-spouse relief. Congress has since 1918 allowed married taxpayers to file joint returns, Revenue Act of 1918, ch. 18, § 223, 40 Stat. 1057, 1074 (1919); *see also Camara v. Commissioner*, 149 T.C. 317, 327 (2017), and has since 1938 held spouses jointly and severally liable for the tax shown on those joint returns, Revenue Act of 1938, ch. 289, § 51(b), 52 Stat. 447, 476; *see also Wilson v. Commissioner*, 705 F.3d 980, 982 (9th Cir. 2013), *aff'g* 99 T.C.M. (CCH) 1552 (2010). A great many couples benefited richly from the more favorable tax rates available to joint filers, but some were

---

[6] Greenberg lived in Florida when he filed his petitions, so the venue for appeal of his cases was the Eleventh Circuit. *See* § 7482(b)(1). Goddard lived in California at the time, so the venue for appeal in his cases was the Ninth Circuit. *See id.* Because DelPonte also lived in California when the petitions in her cases were filed, venue for appeal of her cases would also be in the Ninth Circuit. *See id.*

burdened by the harsh consequences of joint liability. *See Wilson*, 705 F.3d at 983. We commented on the harshness of this rule in *Scudder v. Commissioner*, 48 T.C. 36 (1967), *remanded by* 405 F.2d 222 (6th Cir. 1968), when we held a wife liable for tax on the money her husband had embezzled from the partnership she and her sisters owned and that he had unsurprisingly failed to report on their joint returns.[7] We found that the language of the statute was clear, and that "only remedial legislation can soften the impact of the rule of strict individual liability." *Id.* at 41.[8]

In 1971 Congress enacted legislation to allow a spouse relief from joint and several liability in certain limited situations. Act of January 12, 1971, Pub. L. No. 91-679, 84 Stat. 2063 (codified at § 6013(e)). Relief got a little easier in 1984, *see* Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 424, 98 Stat. 494, 801 (codified at § 6013), but it still required that a spouse seeking relief show that the joint return showed "a substantial understatement of tax attributable to grossly erroneous items of [the other] spouse," that she signed the return without knowing and without having reason to know of the substantial understatement, and that it would be inequitable to hold her liable for the deficiency attributable to the substantial understatement, *id.* Neither Congress nor the Secretary wed this substantive liberalization to any special procedural rules for requesting relief. *See Corson v. Commissioner*, 114 T.C. 354, 358 (2000); T.D. 7320, 1974-2 C.B. 391. The result was that spouses glommed their requests for relief onto petitions to redetermine deficiencies that they filed in our Court or onto complaints for refund filed in a U.S. district court. *See Corson*, 114 T.C. at 358.

Congress liberalized the innocent-spouse-relief provisions again as part of the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. No. 105-206, § 3201, 112 Stat. 685, 734 (codified as amended at § 6015). Under new section 6015, relief was available even if the

---

[7] On appeal, the Sixth Circuit noted that "'trickery' or 'deliberate deception,' employed by [a] husband to obtain his wife's signature to a tax return, will exonerate the victimized wife." *Scudder*, 405 F.2d at 226. It then ordered us to reexamine our findings while considering whether at least some of the embezzled funds should have more properly been treated as a nontaxable loan to the husband because that was how they were recorded in the partnership's books and because he paid back about half of what he took soon after his wrongdoing was discovered. *See id.* at 225.

[8] Two exceptions to this strict rule were that a spouse wouldn't be held jointly and severally liable if there had been duress, *see, e.g.*, *Furnish v. Commissioner*, 262 F.2d 727 (9th Cir. 1958), or fraud, *see, e.g.*, *Sharwell v. Commissioner*, 419 F.2d 1057 (6th Cir. 1969).

understatement was not "substantial" or due to "grossly erroneous" items. Requesting spouses[9] could seek any of three types of relief. The first requires:

- an understatement of tax on the joint return that is attributable to erroneous items of the other spouse;

- that the requesting spouse didn't know or have reason to know of the understatement when she signed the return;

- that, "taking into account all the facts and circumstances, it [would be] inequitable to hold [that spouse] liable for the deficiency . . . attributable to such understatement;" and

- that the requesting spouse seek relief no later than two years after the Commissioner began collection activities.

§ 6015(b).

The second requires the requesting spouse to:

- be legally separated or divorced from the nonrequesting spouse at the time of election; and

- have no actual knowledge of any items giving rise to a deficiency at the time she signed the return.

§ 6015(c).

And then there is the catchall third type that requires proof only that, "taking into account all the facts and circumstances, it [would be] inequitable to hold the [requesting spouse] liable for any unpaid tax or any deficiency," and that the requesting spouse is not eligible for either of the other two types of relief. § 6015(f).

These are known by those who have lettered in innocent-spouse relief as "b", "c", and "f" relief. And each of these three letters can be paired with three paths to Tax Court:

---

[9] Section 6015 speaks of a spouse who "elects" the application of subsections (b) and (c), and "requests" relief under subsection (f). A spouse seeking relief under any of the three subsections is nevertheless commonly referred to as a "requesting spouse." *E.g.*, Treas. Reg. § 1.6015-5(a).

- as an issue—usually called a "defense" even though raised by a petitioner—in a deficiency case;

- in an action to review the IRS's determination in a collection-due-process (CDP) case, a new right also created by RRA 1998; or

- in a "stand alone" action in which we review the IRS's administrative determination made in response to a request for relief filed by a spouse directly with the IRS.

We've already outlined a bit of the history of innocent-spouse relief in deficiency cases. To place DelPonte's argument in the proper context, we need to sketch a bit of background for our expanded jurisdiction in CDP and stand-alone innocent-spouse cases.

RRA 1998 created CDP procedures to enable taxpayers to challenge how the Commissioner collected taxes that he assessed. *See* RRA 1998 § 3401, 112 Stat. at 746 (codified as amended at §§ 6320, 6330). This new CDP right made for a major change in the way the IRS used two of its most important collection tools—liens and levies. Once a taxpayer's liability has been assessed, the amount of the liability becomes a lien in favor of the government. § 6321. When that happens, the Commissioner sends the taxpayer a notice of federal tax lien (NFTL), informing him that the lien has been filed and, under RRA 1998, of his right to request a CDP hearing. § 6320. If the Commissioner wishes to collect tax by seizing a taxpayer's property he must now also send him a notice of intent to levy, which, like the NFTL, informs him of his right to a CDP hearing. § 6330. Congress wedded innocent-spouse relief to CDP law by specifically providing that a spouse could raise entitlement to innocent-spouse relief in a CDP hearing. Regulations provide that when a taxpayer raises innocent-spouse relief in a CDP hearing, the innocent-spouse issue is "governed in all respects by the provisions of . . . section 6015 and the regulations and procedures thereunder." Treas. Reg. §§ 301.6320-1(e)(2), 301.6330-1(e)(2).

Then there's our jurisdiction in stand-alone cases. A spouse may also ask for innocent-spouse relief outside a deficiency case or a CDP hearing. If she does, and if the Commissioner denies her relief, she may, "[i]n addition to any other remedy provided by law, . . . petition [us] (and [we] shall have jurisdiction) to determine the appropriate relief available" under section 6015. § 6015(e)(1)(A).

Congress wanted a requesting spouse to have only one bite from any of these three legal apples. A requesting spouse is "entitled to only one final administrative determination of relief" for a given assessment. Treas. Reg. § 1.6015-5(c)(1). And once we (or a district court) have rendered a final decision on her eligibility for relief—or if she "participated meaningfully" in a court proceeding and chose not to raise a request for relief—then that spouse is barred from relief thereafter. *See* § 6015(g)(2).

We can now classify DelPonte's request with precision. It is for "c" relief in a deficiency case. But whether it is "b", "c", or "f" relief in a deficiency, CDP, or stand-alone case, a requesting spouse has to navigate her way through the ever more detailed revenue procedures and regulations that the Secretary started to issue after section 6015's enactment. This journey begins with the Form 8857. T.D. 9003, 2002-2 C.B. 294. The regulation requires a requesting spouse to file a Form 8857; submit a written statement containing the same information required by Form 8857; or "submit information in the manner prescribed by the Treasury and IRS in forms, relevant revenue rulings, revenue procedures, or other published guidance." Treas. Reg. § 1.6015-5(a). A requesting spouse can do this any time after the Commissioner sends her notice of an audit or a letter that tells her there may be an outstanding liability, *id.* para. (b)(5), but no later than two years after the Commissioner initiates collection activity, *id.* subpara. (1).[10] A single claim can simultaneously request relief under section 6015(b), (c), and (f). *Id.* para. (a)(2).

But if the Code is now clear that a spouse has these ways to ask for three kinds of innocent-spouse relief, it is still murky about who gets to act on those requests and whether that answer differs according to which of the three ways a spouse chooses.

---

[10] We have held the two-year limitations period is invalid as to requests for equitable relief under section 6015(f). *Pullins v. Commissioner*, 136 T.C. 432 (2011). The Secretary hasn't revised his regulations, *see* Treas. Reg. § 1.6015-5(a), and the limitations period remains valid for elections under section 6015(b) and (c), *see Pullins*, 136 T.C. at 437. The Seventh Circuit, however, has disagreed with us about the validity of this two-year limitations period. *See Lantz v. Commissioner*, 607 F.3d 479, 482 (7th Cir. 2010) ("that Congress designated a deadline in two provisions of the same statute and not in a third is not a compelling argument that Congress meant to preclude the Treasury Department from imposing a deadline applicable to cases governed by that third provision").

We begin with the Code. Section 7803 creates the position of Commissioner of Internal Revenue, to whom are given broad powers to "administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws or related statutes," as well as any other "such duties and powers as the Secretary may prescribe." § 7803(a)(2). Regulations authorize the Secretary of the Treasury to delegate any function vested in him to the Commissioner, who is in turn authorized to redelegate that function to an officer or employee under his direct or indirect supervision and control. Treas. Reg. § 301.7701-9(b) and (c). The Secretary has of course for decades delegated to the Commissioner the responsibility of administering and enforcing the internal revenue laws, I.R.S. Treas. Order 150-10 (Apr. 22, 1982), which includes making determinations about whether a taxpayer is entitled to innocent-spouse relief under section 6015, *see* § 6015(e)(1)(A)(i), (5), (f). The Commissioner has redelegated the responsibility for processing most requests for innocent-spouse relief to the CCISO. IRM 25.15.7.1 (Sept. 1, 2006). There are some exceptions: In certain instances, as when there's an ongoing audit for the year for which the requesting spouse is seeking relief, the Field Examination unit conducting the audit has authority to make the determination. *See* IRM 25.15.6.1(4) (Mar. 21, 2008). Once CCISO (or the Field Examination unit) has made a preliminary determination, both the requesting spouse and the nonrequesting spouse can appeal the determination to the Office of Appeals.[11] IRS Appeals is responsible for holding an appeals conference, reviewing the evidence, and issuing a "final determination." IRM 25.15.6.10.3 (June 19, 2017). Or maybe we should say a final *administrative* determination because if Appeals denies her request, a requesting spouse[12] can petition our Court for a really *truly* final determination of her entitlement to relief. § 6015(e). We ourselves can make a determination of our own if CCISO or the Field Examiner doesn't act on a request within six months. § 6015(e)(1)(A).

There is a similarly complicated process when a spouse seeks relief as part of a CDP hearing. She has to first file a Form 12153, Request for a Collection Due Process or Equivalent Hearing (or other written and signed request), with IRS Appeals. IRM 5.19.8.4.2 (Nov. 1, 2007). That form allows her to check a box to claim innocent-spouse

---

[11] Recently renamed the "Independent Office of Appeals." *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001(a), 133 Stat. 981, 983 (2019).

[12] But not a nonrequesting spouse. *Maier v. Commissioner*, 119 T.C. 267 (2002), *aff'd*, 360 F.3d 361 (2d Cir. 2004).

relief and, if she does, instructs her to attach a Form 8857. *See* Form 12153 (Rev. Nov. 2006). IRS Appeals ordinarily sends the Form 8857 to CCISO to investigate the claim, *see* IRM 8.22.1.1.1.5.3 (Oct. 19, 2007), following the same procedures as it would in a stand-alone innocent spouse case, *see* IRM 8.22.2.2.11.3(6) (Jan. 1, 2006). A significant difference, though, is that Appeals retains jurisdiction over the case while CCISO investigates the claim. *See id.* 8.22.2.2.11.3(4). One consequence of this is that CCISO ordinarily doesn't make a *final* determination on what relief is appropriate. *See* IRM 8.22.2.2.11.3.1 and .2 (Mar. 11, 2009). CCISO instead *recommends* a determination to Appeals, which is itself responsible for making a final determination about what relief if any a taxpayer should get. *Id.*[13] A disgruntled requesting spouse can once again petition us to try again. § 6015(e)(1)(A).

These paths are well trod. And they may help us in the unusual situation in DelPonte's case: where we have a requesting spouse who raised innocent-spouse relief as an affirmative defense in deficiency petitions filed under section 6213(a). DelPonte argues that the Secretary has delegated authority to make a final determination to the administrative, not the litigating, side of the IRS. She has a textualist argument based on the regulations, numerous IRM provisions, the Chief Counsel's own written guidance, and even the instructions to the Form 8857. She also argues more purposively that her position is buttressed by the principles of horizontal equity and fundamental fairness. In short, she contends that it's only fair that a requesting spouse raising innocent-spouse relief for the first time in litigation should have CCISO make the determination, just as if she had raised it for the first time in a stand-alone request. According to her CCISO is the decider in chief, and Chief Counsel's job is only to defend CCISO's determination.

The Chief Counsel, on the other hand, argues that his office is responsible for deciding what positions the IRS takes in litigation, and that decision about whether to concede innocent-spouse relief is a litigating position. He of course may ask CCISO for its advice, but he says he gets the final say.

---

[13] As always seems to be the case in tax law, there is a complication: The CCISO can itself make a final determination if it concludes the requesting spouse should get relief *and* the nonrequesting spouse doesn't appeal the determination *and* innocent-spouse relief was the only issue raised in the CDP request *and* the requesting spouse chooses to withdraw the CDP request *and* she waives any right to judicial review. *See* IRM 8.22.2.2.11.3.1.

The Chief Counsel is right that he and his lawyers are responsible for the IRS's litigation decisions. Section 7803—the same section that's the source of the Commissioner's authority—also created the position of Chief Counsel, and authorized him to "perform such duties as may be prescribed by the Secretary, including the duty . . . to represent the Commissioner in cases before the Tax Court." § 7803(b)(2)(D). General Counsel Order No. 4 delegates to the Chief Counsel authority "in cases pending in the Tax Court . . . to decide whether and in what manner to defend, or to prosecute a claim, or to settle, or to abandon a claim or defense therein." *See* IRM 30.2.2–.6 (Aug. 11, 2004). This order also gives the Chief Counsel the authority to redelegate any of his authority to "any officer or employee in the Office of the Chief Counsel, and to authorize further redelegation of such authority." *Id.*

The question we must answer, then, is whether DelPonte's request for innocent-spouse relief—and CCISO's consideration of that request—was like any claim in a case "pending in Tax Court," or more like an administrative request for innocent-spouse relief begun by filing a Form 8857 with CCISO.

This is a question in which a page of history enlightens us more than a volume of logic. Taxpayers were raising innocent-spouse claims as affirmative defenses in deficiency proceedings years before today's administrative processes for seeking relief even existed. Our jurisdiction to rule on those claims is part of our authority under section 6213(a) to redetermine a taxpayer's deficiency when she's received a notice of deficiency. *See Corson*, 114 T.C. at 363–64 ("In a deficiency proceeding, we may take into account all facts and circumstances relevant to ascertaining the correct amount of the deficiency, including affirmative defenses"). Our power in a deficiency case is not limited to the issues listed in the notice of deficiency—it includes issues raised in either the petition or answer or even those tried without objection. *See Ax v. Commissioner*, 146 T.C. 153, 160 (2016). Our jurisdiction to decide an issue in a deficiency case is not dependent on the Commissioner's having already made a determination on that issue administratively; all we need to get jurisdiction to decide is a timely filed petition and a valid notice of deficiency. *Butler v. Commissioner*, 114 T.C. 276, 288 (2000) (citing *Naftel v. Commissioner*, 85 T.C. 527, 533 (1985)). Once we have jurisdiction over a case where entitlement to innocent-spouse relief is an issue, the Commissioner must concede or settle it with a taxpayer if he doesn't want to litigate it. Section 7803(b)(2) and related delegation orders have long delegated those decisions to the Chief Counsel.

But the Chief Counsel also has the power to redelegate authority granted to him. *See* IRM 30.2.2–.6. DelPonte argues in the alternative that Chief Counsel Notice CC-2009-021 (June 30, 2009) is just such a redelegation. That notice instructs attorneys in the Office of Chief Counsel to request CCISO "to make the determination" with respect to cases in which a taxpayer raises innocent-spouse relief for the first time in a deficiency petition. CC-2009-021, at 2. That notice also states: "If CCISO . . . determines the petitioner is entitled to relief, the case should be conceded . . . subject to the limitation that a nonrequesting spouse who is a party to the case must agree" with the determination. *Id.* at 4. If the nonrequesting spouse disagrees, then "the grant of relief must be defended throughout trial and briefing." *Id.*

We can dispense with this argument quickly. Chief Counsel has authority to delegate functions only to an "officer or employee in the Office of the Chief Counsel," IRM 30.2.2–.6, and CCISO is not within the Office of the Chief Counsel, IRM 1.1.13.12.3.3 (Sept. 1, 2005). The plain language of this order gives the Chief Counsel no authority to delegate any of his functions to CCISO.

But we can reformulate DelPonte's contention just a bit: Even though Chief Counsel has responsibility to respond to requests for relief raised for the first time in a deficiency case, he has instructed his lawyers to adhere to CCISO determinations. Are his lawyers going rogue if they disregard this instruction? This is not an argument based on powers of delegation, but on what DelPonte identifies as a possible protection of the Due Process Clause—a requirement that the government follow the procedures that it establishes even if it didn't have to establish them in the first place. DelPonte emphasizes that she doesn't raise this issue in her present motion, but we can head off future motion practice by noting that the Chief Counsel attorneys handling these cases *have* been following established procedures.

We first address DelPonte's argument that CC-2009-021 instructs Chief Counsel attorneys to refer cases to CCISO for a "determination," not a "recommendation." She relies heavily on the text of CC-2009-021—along with the Chief Counsel attorney's correspondence with her and CCISO—to argue that "determinations" cannot be disregarded by Chief Counsel attorneys. We, however, are not convinced that use of the word "determination" in the Chief Counsel notice or any other guidance is the same as what the regulation calls a "final administrative determination." *See* Treas. Reg. § 1.6015-5. We have long recognized that "the name or the label of a document does not control whether the

document embodies a determination." *Wilson v. Commissioner*, 131 T.C. 47, 53 (2008).

In CC-2009-021, the Chief Counsel repeatedly uses "should" when instructing his attorneys on how to handle cases where CCISO determines that relief should be granted, e.g., "[i]f CCISO . . . determines the petitioner is entitled to relief, the case *should* be conceded." CC-2009-021, at 4 (emphasis added). But he elsewhere uses the imperative "must" when describing how an attorney should proceed in different circumstances, e.g., "[i]f the nonrequesting spouse disagrees with the Service's determination to grant relief [to the requesting spouse], then . . . the grant of relief *must* be defended throughout trial and briefing." *Id.* (emphasis added). If Chief Counsel had wanted all his attorneys to accept CCISO's determinations in every case, he could easily have conveyed that desire by telling them they "must" do so. But he did not.

CC-2009-021 is, moreover, only one of a series of notices that deal with requests for innocent-spouse relief raised for the first time in cases pending before us. CC-2009-021 was itself a supplement to the earlier Chief Counsel Notice CC-2004-26 (July 12, 2009), *id.* at 1, which was issued in response to our holding in *Ewing v. Commissioner*, 122 T.C. 32 (2004), *rev'd and vacated*, 439 F.3d 1009 (9th Cir. 2006). We held in *Ewing* that, although we reviewed the Commissioner's denial of equitable relief under section 6015(f) for abuse of discretion, our review was not confined to the administrative record. *Ewing*, 122 T.C. at 38–39. CC-2004-26 included instructions for how Chief Counsel attorneys should handle section 6015(f) cases to keep the scope-of-review issue alive for appeal. CC-2004-026, at 1–2. It also sought to solve the problem of how to handle requests for equitable relief that were raised for the first time before us—either in deficiency petitions or after six months had passed since the taxpayer requested relief—and in such cases there *would be no* administrative record to review. His solution was to have those cases remanded to CCISO for a determination and to create an administrative record. *Id.* at 3. The notice told CCISO to "send all evidence the petitioner presented . . . and its written analysis to the Chief Counsel attorney handling the docketed case. If CCISO determines the petitioner is entitled to relief, the Chief Counsel attorney *should consider* whether settlement is appropriate." *Id.* at 4 (emphasis added).

CC-2009-021 itself was prompted by our opinions in *Porter v. Commissioner* (*Porter I*), 130 T.C. 115 (2008), and *Porter v.*

*Commissioner* (*Porter II*), 132 T.C. 203 (2009), CC-2009-021, at 1, in which we held that we would conduct trials *de novo* in innocent-spouse cases, *Porter I*, 130 T.C. at 125, and make our own determinations about relief under section 6015(f) with no deference to the IRS, *Porter II*, 132 T.C. at 210. Like its predecessor, CC-2009-021 provided guidance to the Chief Counsel lawyers on how to preserve these issues for appeal. CC-2009-021, at 2. It also told Chief Counsel attorneys that they should continue asking CCISO to make determinations in all section 6015 cases, and they should continue to concede cases where CCISO determined the requesting spouse was entitled to relief. *Id.* at 2–4.

Chief Counsel Notice CC-2013-011 (June 7, 2013), issued after *Wilson*, 705 F.3d 980, confirmed that section 6015(e)(1)(A) provided for both a *de novo* standard *and* scope of review in section 6015(f) cases, and rendered both these older notices obsolete.[14] This notice was published after CCISO had already rendered its decision on DelPonte's request, but we believe it is still helpful in understanding the Chief Counsel's guidance that was in effect. CC-2013-011 again requires that Chief Counsel attorneys request a determination from CCISO where a petitioner requests relief under any provision of section 6015. CC-2013-011, at 1–2. It also clarifies that "the trial attorney *should, except in rare circumstances*, follow the determination made by CCISO that the petitioner is entitled to relief and settle the case in accordance with CCISO's determination." *Id.* at 3 (emphasis added). The "should" instead of a "must" means that in this context the CCISO's decisions are advisory, and that Chief Counsel attorneys get to make the final decision about the IRS's views on any particular request for innocent-spouse relief when a taxpayer seeks it in a deficiency case.

And let us zoom out to look one last time at the IRM. It says that if innocent-spouse relief is raised for the first time in a case already docketed in court, "[j]urisdiction is retained by . . . Counsel, and a request is sent to CCISO to consider the request for relief." IRM 25.15.12.25.2(1) (Nov. 9, 2007). It specifies that "Counsel . . . has functional jurisdiction over the matter and handles the case and request for relief, and either settles or litigates the issue on its merits, as appropriate." *Id.* 25.15.12.25.2(3).

---

[14] Congress eventually settled the issue when it decided that we should review the IRS *de novo* based upon the administrative record and "any additional newly discovered or previously unavailable evidence." Taxpayer First Act § 1203(a)(1), 133 Stat. at 988 (codified at § 6015(e)(7)).

We therefore hold that the Chief Counsel notices and the IRM all tell CCISO to provide "assistance," not to make a final determination, and that Chief Counsel attorneys retain their discretion to adopt or reject CCISO's conclusions.

We finally address DelPonte's argument that principles of horizontal equity and "fundamental fairness" require that all taxpayers be entitled to a final determination of relief from CCISO, regardless of whether they first request relief in a petition for redetermination of a deficiency, in a stand-alone petition, or in a CDP hearing. She correctly points out that taxpayers often have no choice in when they are first able to request relief—her case is an excellent example. She believes that adopting the position of the Office of Chief Counsel would put requesting spouses who first raise innocent-spouse relief in a petition for redetermination of a deficiency in a materially worse position than all other requesting spouses because all other requesting spouses have the opportunity to appeal a denial of relief by CCISO to Appeals before starting a case with us as a last resort. Is it not unfair that some who seek relief can have a try at CCISO, Appeals, and Tax Court, but others get Tax Court alone?

Arguments from fairness are always fragile, and this one breaks apart for two reasons. The first is its faulty premise—an Appeals officer who receives a request for innocent-spouse relief in a CDP hearing forwards the case to CCISO for processing but retains jurisdiction, *see* IRM 8.22.2.2.11.3(4), and makes the ultimate decision for the IRS about whether to grant relief, *see* IRM 8.22.2.2.11.3.1–.2. In that sense, the Appeals officer's role is very similar to that of the Chief Counsel attorney in deficiency cases—the difference, of course, being that the Appeals officer can make a final determination granting relief, whereas a Chief Counsel attorney can only decide not to argue that we should deny relief. So a requesting spouse who raises an innocent-spouse claim for the first time in a CDP hearing really gets only two levels of review—Appeals and us—not three. Requiring CCISO to have the opportunity to issue a final determination in cases where the requesting spouse raises an innocent-spouse claim for the first time in a deficiency petition would therefore not guarantee that all spouses be treated equally regardless of when they request relief; it would merely make CDP cases the outlier.

The second and more important problem with this argument is that we have no power to adopt it. Congress gave us exclusive jurisdiction to redetermine the correct amount of a taxpayer's deficiency for a given tax year once the taxpayer receives a valid notice of deficiency

and timely files a petition with us. *See* § 6213(a); *Naftel*, 85 T.C. at 532–33. Congress also gave the Chief Counsel the authority to litigate cases before us. § 7803(b)(2)(D). We cannot undo this statutory scheme by depriving either ourselves or the Chief Counsel of the powers it has given to us in the name of fairness.

The Chief Counsel in these cases has considered the determination of CCISO to grant DelPonte relief and decided not to adopt it without further investigation. That is his prerogative, and we will not force him to do otherwise.

*An appropriate order will be issued.*